[S. F. No. 1764. Department Two.—November 9, 1899.]

A. M. GARDNER, Medical Superintendent of the Napa State Hospital, Plaintiff, v. JOSEPH P. JONES, Judge, et cetera, Defendant.

INSANE PERSON—COMMITMENT OF PRISONER—DETERMINATION OF SANITY—HABEAS CORPUS—POWER OF JUDGE.—Under sections 13 and 14 of article III of the insanity law of March 31, 1897, and the provisions of the Penal Code regulating the commitment of persons charged with crime, a person who has been duly committed to a hospital for the insane by the superior court pending his trial upon a criminal charge has the right, under section 1473 of the Penal Code and section 5 of article I of the constitution, to institute and prosecute a writ of *habeas corpus* in the superior court of the county in which the hospital is located, to have it determined that he has recovered his sanity, and is entitled to be discharged from the hospital and redelivered to the sheriff of the county from which he was committed; and such proceeding may be instituted and such action had, although the medical superintendent of the hospital fails or refuses to act in the matter.

ID.—REFUSAL OF SUPERINTENDENT TO ACT.—Where the medical superintendent refuses to act, and resort is had to the court, the judge has power, in the *habeas corpus* proceedings, not only to adjudge the patient to be sane, but to order him redelivered to the sheriff to be dealt with under the Penal Code.

ID.—JUDGE QUALIFIED TO HEAR PROCEEDING.—Under section 13 of article III of the insanity act, it is not required that the hearing to determine the petitioner's return to sanity should be had before the judge elect of the superior court of the county in which the hospital is situated; under section 71 of the Code of Civil Procedure, at his request a judge of the superior court of another county has like power to hear and determine the proceedings.

ID.—POWERS OF SUBSTITUTED JUDGE.—Under section 71 of the Code of Civil Procedure, a judge of one county who has been called by the judge of another county to hold the court of the latter, or who has been requested by the governor to do so, has all the powers of the judge of the court to which he is called. Such section is not in conflict with section 8 of article VI of the constitution, providing that "a judge of any superior court may hold a superior court in any county," et cetera.

APPLICATION to the Supreme Court for a writ of prohibition.

The facts are stated in the opinion.

W. H. Anderson, E. J. Livernash, and J. T. York, for Plaintiff.

Dinkelspiel & Gesford, and E. L. Webber, for Defendant.

CHIPMAN, C.—Application for a writ to prohibit defendant from entertaining jurisdiction in a certain *habeas corpus* case. One Buchanan was duly committed to the Napa State Hospital for the Insane by the superior court of Yuba county pending his trial upon the charge of murder. A friend of Buchanan, one Muller, presented his petition to the Hon. E. D. Ham, judge of the superior court of Napa county, setting forth, among other things, that Buchanan has recovered his sanity and is entitled to be discharged from the state hospital and redelivered to the sheriff of said Yuba county to be dealt with as provided by chapter VI of the Penal Code, and that his detention in said hospital, as an insane patient, has become and now is illegal. Judge Ham issued the writ, returnable "before the acting judge of said superior court," in the courtroom of the superior court of Napa county. At the request of Judge Ham, defendant, who was then judge of the superior court of Contra Costa county, proceeded to hold the superior court of Napa county, and while so doing assumed jurisdiction in this *habeas corpus* case. The petitioner in this present proceeding, the medical superintendent of the Napa State Hospital, made return to the writ, showing the legal commitment of Buchanan to the asylum, and alleging that he has not recovered his sanity. He claims that Buchanan cannot be delivered to the sheriff of Yuba county except upon the certificate of plaintiff that Buchanan has recovered his sanity, approved by the judge of the superior court of that county; and that the superior court of Napa county is without jurisdiction or authority to order plaintiff to so redeliver Buchanan.

1. It is contended that section 13, article III, of the insanity law, approved March 31, 1897 (Stats. 1897, p. 311), does not apply to insane persons of Buchanan's class. The question is an important one, inasmuch as it involves the right of an inmate of a state hospital, who happens at the time to be resting under a criminal charge and is committed pending trial for his crime, to have his alleged insanity made the subject of judicial

inquiry by the writ of *habeas corpus.* It is claimed that "the medical superintendent is the only person or tribunal vested by law with authority to determine whether or not an insane patient of this class has recovered."

Section 13, article III, of the insanity law provides as follows: "Anyone in custody as an insane person is entitled to a writ of *habeas corpus* upon a proper application made by a relative or some friends in his behalf to the superior judge of the county in which the hospital is located. Upon the return of such writ the fact of his insanity shall be inquired into and determined. The medical history of the patient, as it 'appears in the clinical records, shall be given in evidence, and the superintendent in charge of the state hospital wherein such person is held in custody, and any other persons, shall be sworn touching the mental condition of such person."

That part of section 14, article III, relied upon reads as follows: "A patient committed to a hospital under the provisions of chapter VI, title X, part II, of the Penal Code of this state, shall, upon the certificate of the superintendent that such person has recovered, approved by the superior judge of the county from which the patient was committed, be redelivered to the sheriff of such county and dealt with as provided for by said chapter VI of the Penal Code."

The provisions of the Penal Code regulating the commitment of persons charged with crime are found in sections 1367 to 1373. No question arises as to the regularity of Buchanan's commitment under these provisions. Section 1372 provides as follows: "If the defendant is received into the asylum, he must be detained there until he becomes sane. When he becomes sane, the superintendent must give notice of that fact to the sheriff and district attorney of the county. The sheriff must thereupon, without delay, bring the defendant from the asylum and place him in proper custody until he is brought to 'trial or judgment, as the case may be, or is legally.discharged."

Section 1473 of the Penal Code provides as follows: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of *habeas corpus* to inquire into the cause of such imprisonment or restraint."

Section 5, article I, of the constitution reads: "The privilege

of the writ of *habeas corpus* shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require its suspension."

We find in the statute no authority for making two classes of insane—one civil and the other criminal—and by any such classification to take the latter out of the operation of the statute as to the right of *habeas corpus*. Section 13, article III, of the insanity law makes no such distinction. But plaintiff contends that section 14 of article III in terms confers authority upon the medical superintendent to determine when the patient of the criminal class is restored to sanity, and, as the authority is not conferred upon any other person or tribunal, it is necessarily exclusive, and also proves that the law recognizes the two mentioned classes of insane. We cannot believe that the legislature intended to enact a law so entirely out of harmony with the spirit and letter of the constitution and the statute to which attention has been called. It is our duty to harmonize sections 13 and 14, article III, of the insanity law, so as to conform to the constitution and to the statutes quoted, if we can, rather than resort to the more extreme necessity of holding section 14 to be unconstitutional, as defendant claims it to be, if given the construction placed upon it by plaintiff. We think it was intended by section 14 to provide means by which a patient of Buchanan's class, whose reason has become restored, could be at once remanded to the sheriff of the proper county for trial; but it was not intended that the arbitrary power should rest with the medical superintendent to deprive the patient of the right to be so returned, nor was it intended that the medical superintendent should be the exclusive judge of the patient's restoration. The commitment is made under section 1370 of the Penal Code, which provides "that upon his becoming sane he be redelivered to the sheriff"; and section 1372 provides that "if the defendant is received into the asylum he must be detained there until he becomes sane. When he becomes sane, the superintendent must give notice of that fact to the sheriff and district attorney of the county. The sheriff must thereupon, without delay, bring the defendant from the asylum and place him in proper custody until he is brought to trial or judgment, as the case may be, or is legally discharged." The law

does not justify the detention: 1. If there be not a legal commitment; and 2. If the patient has recovered his sanity. If there be no legal commitment, or if the patient has become restored to sanity, there is lack of authority to detain him, and the question may be inquired into by *habeas corpus*. A fair construction of all the provisions of the statutes on the subject leads to the conclusion that, in a case like this, the superintendent of the state hospital may discharge the patient, and, if he fails or refuses to act, the inmate may institute the inquiry into his sanity by the process of *habeas corpus*. Defendant contends that the superior court can, upon inquiry by the writ, go no further than to adjudge the inmate to be sane and cannot discharge him or grant the relief asked, and hence it was the plain duty of the court to discharge the writ and remand the petitioner forthwith. We are cited to section 382b of Church on Habeas Corpus. The author is there dealing with an attempt by the writ to review the proceedings by which the person was declared to be insane. Here there is no such attempt; the legality of the commitment is not questioned. The question here is, not whether Buchanan was insane when committed, but whether he has since become sane—a question not at all involved in the original proceeding. The question of Buchanan's recovery, in our opinion, is jurisdictional and may be examined upon *habeas corpus*.

We can see no more authority for detaining an inmate of a state hospital against his will, after he has become restored to reason, than for detaining a prisoner upon conviction of crime after he has served out his sentence; or for detaining a person upon a criminal charge for an act to which the law attaches no criminality; and in this latter case the prisoner would be entitled to his discharge for lack of jurisdiction to hold him. (*Ex parte Kearny*, 55 Cal. 212.)

If Buchanan has recovered his reason the commitment under which he is held will not justify his further detention, for it operates only so long as the inmate is insane.

Counsel for plaintiff say in their brief that the learned judge (defendant) held at the hearing that he had the power to inquire into and adjudge the question of Buchanan's sanity, but had not the power to discharge him or order him returned to

the sheriff of Yuba county; that the judge could only send him back to the hospital and leave the enforcement of his rights to some other appropriate proceedings. It is hence argued that this is a misconception of the functions of the writ and concedes the duty of the judge to remand Buchanan. It is true that section 14, article III, of the insanity law provides that the patient shall, upon the certificate of the superintendent that he has recovered, approved by the judge of the county from which the patient was committed, be redelivered to the sheriff of such county, and dealt with as provided by chapter 6, title 10, part 2, of the Penal Code; but that is where the superintendent acts. Where he refuses to act and resort is had to the court, we think the judge has the power not only to adjudge the patient to be sane, but to order him redelivered to the sheriff to be dealt with under the Penal Code. Section 1484 of that code declares that the court or judge "shall dispose of such party as the justice of the case may require." Section 1493 provides: "In cases where any party is held under illegal restraint or custody, or any other person is entitled to the restraint or custody of such party, the judge or court may order such party to be committed to the restraint or custody of such person as is by law entitled thereto." In his petition Buchanan does not ask to be restored to his freedom; he asks to be redelivered to the sheriff of Yuba county, to be there put upon trial under the charge resting against him. We can see no reason why the court or judge should not have the power by an order to direct that Buchanan be redelivered to the sheriff as prayed for by him, should he be found to be sane. Why should he be remanded to the custody of the superintendent, who would no longer have authority to detain him? Or why should he be required to resort to some other proceeding in order to obtain the relief which he may have in the *habeas corpus* proceeding?

2. Defendant makes the point that the judge of the superior court of Napa county alone has jurisdiction, since the language of section 13, article III, of the insanity law provides that the application authorized by it is to be made "to the superior judge of the county in which the hospital is located." The section also provides as follows: "Upon the return of such writ the fact of his insanity shall be inquired into and determined."

The act does not require the hearing to be before the judge elect of the superior court of the county. He may be disqualified to act by reason of relationship to the petitioner or for other cause. Section 71 of the Code of Civil Procedure provides that "a judge of any superior court may hold the superior court in any county, at the request of the judge . . . . . of the superior court thereof," and such judge "shall have the same power as a judge thereof." (*In re Newman,* 75 Cal. 213; 7 Am. St. Rep. 146.) Defendant claims that if this code section supports plaintiff, which we think it does, it must be held to be in violation of section 8, article VI, of the constitution, which reads: "A judge of any superior court may hold a superior court in any county," et cetera. The argument is, that this provision expressly limits the jurisdiction of the judge requested to act for another to holding a superior court of the county to which he is called, and that in section 71 of the Code of Civil Procedure the legislature has, without authority, added: "In either case, the judge holding the court shall have the same power as a judge thereof." So far as I am aware, the constitutionality of this section of the code has never before been questioned, although cases have come here for review where the question might have been raised. I believe the universal practice throughout the state has been, where a judge of one county has been called by the judge of another county to hold the court of the latter, or where the governor has requested him to do so, to accord to the judge thus called all the powers of the judge of the court to which he is called. I do not think the code has enlarged the powers given by the constitution. In the absence of the clause in section 71, added to section 8, article VI, of the constitution, we would hold the power to exist. Any other construction would make the provision of little value, would defeat the manifest intention of the constitution, and would disturb many judgments of our courts in numerous classes of cases which have been rendered upon the hitherto unquestioned belief that the judge for the time possesses all the powers of the judge whom he represents.

We advise that the writ be denied.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the writ is denied.                                                    Temple, J., Henshaw, J.

McFARLAND, J., concurring.—I concur in the judgment because I see no way to hold otherwise consistently with the sacred right of the citizen to invoke the remedy of the writ of *habeas corpus*. Some slight impairment of the efficiency and discipline of insane asylums may possibly follow; but it is not to be assumed that a judge of the superior court will declare a man to be sane contrary to the judgment of the superintendent of the asylum except in a very clear and strong case.