McGRIFF, ordinary, *et al. v.* STATE *ex rel.* GRAHAM, solicitor-general.

1. Where one under indictment for murder was taken in custody and placed in jail to await his trial, it was not lawful for the ordinary of the county, upon petition of the mother of the prisoner, alleging that he was insane, to proceed under the Civil Code, § 2573, to appoint a commission to examine into the question of sanity and make a return to him, and in case they should find him insane to direct the person to be committed to the State sanitarium for insane persons.
2. Such action being illegal, it was proper for the judge of the superior court, upon application of the solicitor-general, to issue the writ of prohibition to prevent the ordinary, who had appointed a lunacy commission and set a time for the hearing, from proceeding further therewith.

OCTOBER 13, 1910.

Prohibition.    Before Judge Martin.    Pulaski superior court. May 2, 1910.

The State, on the relation of E. D. Graham, solicitor-general of the Oconee circuit, filed a petition for the writ of prohibition to be directed to the ordinary of Pulaski county, alleging, in brief, as follows:  In 1898 John Watts was indicted by the grand jury of that county for the offense of murder.    Immediately after the homicide, and before he was arrested, he fled from the State, and was not discovered or apprehended until shortly before the February term, 1910, of the superior court of Pulaski county.    He was then arrested in the State of Texas and brought back to Georgia and lodged in jail, where he still is.    At that term his trial was continued, on motion, on account of the illness of his

counsel, and the case was set for trial at a special term to be held on the first Monday in May, 1910. In March the mother of the prisoner made application to the ordinary to have him adjudged a lunatic and sent to the State sanitarium under the Civil Code of 1895, § 2573. The ordinary proceeded to issue a commission, in order to have the prisoner tried for lunacy. If he should be found to be insane, the ordinary will commit him to the State sanitarium, unless prohibited from proceeding further to have the trial and committal. Neither the solicitor-general nor his associate counsel nor the prosecutor was informed of such proceedings until the time for holding the lunacy trial had been fixed by the ordinary. The proceedings already had and those contemplated before the ordinary are illegal. There is no provision of law for the State or the solicitor-general or the prosecutor in a murder case to be made a party to the proceedings before the ordinary, or to object to such proceedings before that officer. If the prisoner is declared to be insane, the effect will be to remove him at once beyond the jurisdiction of the superior court, or at least its immediate jurisdiction, and take him out of the hands of the officers of that court, who are holding him under a bench warrant, and to place him in the State sanitarium in a different county; and upon his restoration to sanity, he will at once be discharged and be at liberty to again flee from the State. Ample provision has been made by law for the trial of an issue of insanity of the prisoner in the superior court. If at such trial he is found insane, he will be committed to the State sanitarium under a judgment of the court commanding the authorities to recommit him to the officers of this county, upon his restoration, to answer to the charge of murder. The right of the ordinary to take a prisoner, who was held under a charge of murder, from the custody of the sheriff and jailer was denied; and it was alleged, that, if the proceedings before the ordinary were not arrested by the writ of prohibition, the superior court would lose the trial of the prisoner, and the State would be denied the privilege of giving him a trial for the offense with which he stood charged. It was alleged that there was no remedy other than the writ of prohibition.

An order nisi was issued. On the hearing there was no controversy about the facts, though the respondent denied the legal conclusions stated in the application. The case was submitted to

the presiding judge, who granted the writ of prohibition, and the ordinary excepted. Pending the proceeding, a brother of the accused made application to intervene and be made a party. This was allowed by consent, and he joined with the ordinary in opposing the issuance of the writ, and in his exception to the judgment.

*John R. Cooper, M. H. Boyer,* and *T. C. Taylor,* for plaintiffs in error. *E. D. Graham, solicitor-general, W. L. & Warren Grice,* and *H. L. Grice,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

By the Civil Code of 1895, § 2573, it is declared, that, "Upon the petition of any person, on oath, setting forth that another is liable to have a guardian appointed (or is subject to be committed to the Lunatic Asylum of this State), the ordinary, upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within this State, shall issue a commission," etc. The commissioners appointed are required to examine, by inspection of the person and hearing testimony, if necessary, as to his condition and capacity to manage his estate, and to make return to the ordinary. Upon such return finding the person to be as alleged in the petition, or within either of the classes named, the ordinary shall appoint a guardian for him or commit him to the lunatic asylum (now called the State sanitarium). § 2574. Guardians of insane persons are authorized to confine them, or place them in the State sanitarium, if necessary for their own protection or the safety of others. § 2581. By section 2582 provision is made, that, "When there is no guardian for an insane person, or the guardian, on notice, refuses or fails to confine his ward, and any person shall make oath that such insane person, for public safety or other good and sufficient reason, should not longer be left at large," the ordinary shall issue a warrant as in criminal cases for the arrest of the insane person, and on an investigation of the facts may commit him to the State sanitarium.

The proceeding which was instituted before the ordinary was not to have a guardian appointed for the estate of the prisoner; nor was it one under section 2582, to have an insane person confined, who, for public safety or other good and sufficient reason, should not be left at large. The prisoner was not at large. He was already confined in jail. The question was whether section

2573 of the code authorized the ordinary, upon application, to appoint a lunacy commission, proceed with an investigation under that section, and have the prisoner (who had been indicted for murder, and was held in jail under a bench warrant awaiting trial), if declared insane, taken from the custody of the jailer and of the superior court and sent to the State sanitarium. It was contended that the section of the code was general in its character and covered all cases without exception; but this is not correct. Section 1047 of the Penal Code of 1895 provided for dealing with cases where a person became insane after conviction and after sentence of death had been pronounced. This was amended by the act of December 21, 1897 (Acts 1897, p. 41), and again by the act of August 17, 1903 (Acts 1903, p. 77). So that in this instance section 2573 of the Civil Code was never applicable. By section 951 of the Penal Code it is provided, that, "Whenever a plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury; and if found to be true, the court shall order the defendant to be delivered to the superintendent of the asylum, there to remain until discharged in the manner prescribed by law." If a person who has been acquitted of a capital crime on the ground of insanity is committed to the asylum, he can not be discharged therefrom except by special act of the legislature. If the crime is not capital, he may be discharged by warrant or order from the Governor. "If sentence is suspended on the ground of insanity, upon restoration to sanity the superintendent shall certify the fact to the presiding judge of the court where he was convicted." Penal Code, § 952. By section 953 it is declared as follows: "No lunatic, or person afflicted with insanity, shall be tried, or put upon his trial, for any offense, during the time he is afflicted with such lunacy or insanity, which shall be tried in the manner hereinbefore pointed out where the plea of insanity at the time of trial is filed, and, on being found true, the prisoner shall be disposed of in like manner." Here are contained provisions in the Penal Code for raising the issue of insanity in criminal cases by special plea, and the mode of trying such issue, and the result of the finding thereon. We do not deal with the matter of introducing evidence of insanity under the plea of the general issue, as that is not here involved. The section of the Penal Code last above quoted states

that no insane person shall be tried, or put upon his trial, for any offense, while so afflicted, and expressly declares that this "shall be tried in the manner hereinbefore pointed out where the plea of insanity at the time of the trial is filed," and what shall be the disposition of the prisoner if the plea be found true. In such a trial the State is a party and has the privilege of introducing evidence and cross-examining witnesses. If insanity is established, certain results follow for the protection of the public. In a proceeding under section 2573 no notice is required to be given to the State or its officers, nor is there any provision for them to be heard or to contest the alleged insanity. The only notice required to be given is to the three nearest adult relatives of the prisoner, if there are any such within the State. To hold that one indicted for murder and held by the State authorities for trial could be taken out of their custody on a proceeding instituted by his mother or other near relative, with notice to nobody save his immediate family, and sent to the State sanitarium or committed to the custody of a guardian, would be to establish a method of ousting the jurisdiction of the superior court not contemplated by law. The section of the Civil Code must be construed in harmony with those in the Penal Code, and not as destroying their efficacy.

It may be noticed also that the section of the Civil Code under which this proceeding was sought to be taken provides for cases when it should be made to appear by petition that a person is liable to have a guardian appointed, "or is subject to be committed to the lunatic asylum of this State." But one who is held in jail to await his trial for murder is not subject to be committed to the State sanitarium (lunatic asylum) of this State by the action of the ordinary, independent of any proceeding in the superior court. We do not discuss the question whether a person who is out under bond might be subject to a proceeding under section 2573 or section 2582 of the Civil Code, or what effect the action of the ordinary in such a case would have upon the trial of the criminal case, if any. That question is not before us.

There was no other remedy to prevent the unlawful proceeding before the ordinary except the grant of the writ of prohibition, and it was properly granted. Civil Code, § 4885.

It was suggested that the prisoner might need special treatment for his malady, and therefore should be sent to the State sanitarium,

and not allowed to remain in jail until his trial was had in the superior court. No doubt the judge, in connection with the county authorities, would make such provision for proper attention and treatment as the nature of the circumstances would permit, and as humanity should require. Treatment of an insane person is desirable.· So likewise is treatment of a person suffering from a physical malady. But the public safety is also involved, and some hardships are necessarily incident to being incarcerated in prison under a charge of murder. Prior to the creation of the· State asylum the law provided for the committing of dangerous lunatics or insane persons to the common jail. Cobb's Digest, 344. Even now, under section 2582, there may be an arrest of an insane person, who for the public safety should not be left at large, and he may be temporarily committed to jail until he can be removed to the State sanitarium. These temporary inconveniences may be unfortunate, but they can not be allowed to destroy the proper administration of the criminal law for the public safety.

The case before us was called for trial at the February term of court, and postponed at the instance of the prisoner's counsel. It was set to be tried on the first Monday in May, which was the second day of the month. Sometime in March the proceeding before the ordinary was commenced. The application for the writ of prohibition was heard by the judge of the superior court on the day which had been set for the trial of the criminal case. It will therefore appear that, as applied to the case in hand, the apprehension of delay and lack of medical attention is rather theoretical than warranted by the actual facts.

*Judgment affirmed. All the Justices concur.*