# WAGNER v. WHITE.

---

CRIMINAL LAW; INSANITY; COMMITMENT OF INSANE PRISONERS; HABEAS CORPUS.

1. Sec. 927, D. C. Code [31 Stat. at L. 1340, chap. 854], providing for an inquiry into the sanity of persons found guilty of crime, is valid, as ample provision is made for the inquiry to be conducted with due regard to their protection.

2. The fact that sec. 929, D. C. Code, providing that when a person confined in the hospital for the insane, charged with crime, and subject to be tried therefor, or undergoing sentence therefor, shall be restored to sanity, the superintendent of the hospital shall give notice thereof to the criminal court, and deliver him to the court according to its proper precept, does not provide for the course to be pursued in behalf of such a person where the superintendent fails or refuses to certify to the restoration of his sanity, does not render the section invalid. Under such circumstances, even if the lower court, on a proper showing on behalf of the prisoner, has not the power to cause him to be produced, and a judicial inquiry made to ascertain whether he has been restored to sanity, the prisoner is not precluded from

having such an inquiry made by means of a habeas corpus proceedings.

3. Where a party was convicted of a crime, found to be insane, and committed to the hospital for the insane; subsequently allowed to go at large upon his personal recognizance and in the care of his brother; and then rearrested and returned to the hospital under the original commitment; it was *held,* affirming a judgment of the lower court overruling a demurrer to the return of the superintendent of the hospital to a petition by the prisoner for the writ of habeas corpus, in which return it was alleged by the superintendent that the prisoner was still insane,—that, while the proceedings were irregular, the petitioner had no right to complain, as there was nothing to show that his sanity had been restored.

No. 2365.  Submitted April 1, 1912.  Decided April 22, 1912.

HEARING on an appeal by the petitioner from a decree of the Supreme Court of the District of Columbia overruling his demurrer to a return by the superintendent of the government hospital for the insane to a petition for the writ of habeas corpus, and remanding the petition to the custody of the respondent.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Harrison Wagner, through his next friend, Isaac R. Hitt, Jr., sued out a writ of habeas corpus in the supreme court of the District of Columbia, alleging that he was restrained of his liberty by William A. White, superintendent of the government hospital for the insane in the District of Columbia. The petition alleges that said Harrison Wagner was convicted of perjury in the supreme court of the District on May 23, 1907; that pending a motion for new trial, an inquiry into his sanity was ordered, and on July 8, 1907, he was committed to the hospital for the insane; that on October 12, 1908, he was brought before the court, discharged from the hospital, and by consent if his then counsel, his motion for new trial was dismissed, and he was released from custody on his personal recognizance in the sum of $100. That he remained at large until March 15, 1910, when he was arrested on a bench

warrant and committed to jail, and subsequently delivered to the hospital under the original commitment of July 7, 1907, and has ever since been there confined. That petitioner is not now insane, that he was discharged in October, 1908, and his last commitment was without due process of law. The petition was supported by the affidavits of three persons, one of them a physician, who allege that in their opinion petitioner is now sane.

The return to the writ made by William A. White, superintendent of the hospital for the insane, contains a recital of the proceedings relating to the commitment of petitioner, accompanied by a transcript of the proceedings.

The facts alleged are substantially as follows: Petitioner was found guilty under an indictment for perjury on the 23d day of May, 1907, in the supreme court of the District of Columbia; a motion for new trial was filed May 27, 1907; on May 31 a petition was filed on behalf of said Wagner for an inquiry into his sanity; the petition was granted and the motion for new trial continued. On July 3 the hearing was had, and petitioner was found to be insane by verdict of a jury, and, the finding having been certified to the Secretary of the Interior, he was by said Secretary authorized to be admitted to the hospital and there confined, as required by law. On July 8, 1907, a motion was made to set aside the verdict of guilty in the perjury prosecution, upon the ground that he was insane when that verdict was returned. That said motion has not been acted upon, and, not having been continued for hearing to another term of court, has become inoperative and of no effect. That the criminal cause was continued from term to term for judgment upon the verdict of guilty until October, 1908. That on October 12, 1908, the motion for new trial was overruled, and the personal recognizance of petitioner was taken for his appearance in court when required; and on the same day petitioner was paroled by said court and discharged from the hospital, as being then improved, in care of his brother. That he was not discharged as cured, and the said release was temporary, and not final. That during his confinement in the

hospital, petitioner was suffering from delusions, and at the time of his said discharge in care of his brother, his physical condition was improved, but his mental condition remained the same. That on March 14th, 1910, petitioner was arrested under a bench warrant issued by said court, and on March 31 was ordered to be delivered to the respondent under the former order of commitment. That since his return to custody he has exhibited the same mental unsoundness, and in addition has begun to show evidences of senile deterioration; his memory, etc., are impaired. On April 27, 1911, petitioner entered a demurrer to the return aforesaid, and without withdrawing the same, on May 16, filed a traverse of the return. The demurrer was overruled on May 23, 1911, and the cause retained to have the insanity of the petitioner inquired into. On June 14 petitioner withdrew his traverse of the return and stood upon his demurrer, renewing his exceptions to the former order overruling the same. Thereupon the petitioner was remanded to the custody of respondent until further order. From this order petitioner appealed.

*Mr. Richard P. Evans* and *Mr. Isaac R. Hitt* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, and *Mr. John Lewis Smith,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The first assignment of error is that the original order committing the appellant to the hospital for the insane did not constitute a lawful commitment under due process of law, and that the provisions of the Code relating thereto are unconstitutional. Sec. 927 [31 Stat. at L. 1340, chap. 854] provides for an inquiry into the sanity of an accused person who has been found guilty of a crime. There can be no reasonable objection to the validity of the provision. It makes ample pro-

vision for the inquiry which is conducted with due regard to the protection of the defendant. It was invoked by the petitioner, and after the return of a verdict finding him insane, he was committed to the hospital, as required by the law. The principal objection is urged to sec. 929, which provides that when one committed under the preceding sections shall be restored to sanity, the superintendent shall give notice thereof to the justice holding the criminal court, and deliver him to the court according to its proper precept.

The objection is that no means is provided for the ascertainment of restored sanity, but the same is left to the discretion of the superintendent of the hospital. It is argued that under this section the court cannot recover jurisdiction over the committed person, unless the superintendent shall voluntarily certify that he has been restored to sanity; nor can the prisoner set in motion any effective means to procure his discharge.

We do not concur in the soundness of this argument. The provision that the superintendent shall certify to the restoration of the sanity of the prisoner, and that he may then be brought before the court for sentence, is founded in the presumption that the superintendent will perform the duties of his office fairly and properly, and is a reasonable one. But, assuming that, in instances, the officer might not perform his duty, and might not certify to the restoration of the prisoner's sanity, it does not follow that the situation is without remedy. The prisoner, having been convicted, and his sentence suspended by reason of his insanity, is not released from the jurisdiction of the court. If the court should be advised that the prisoner, committed to the hospital to remain while insane, had been restored to sanity, and that the officer in charge had failed to certify to the fact, we are not prepared to say that it might not cause the prisoner to be produced and judicial inquiry made to ascertain the fact; nor, if found to be restored to sanity, it might not proceed to sentence him in accordance with the verdict. But that question is not directly involved. On the other hand, the section does not provide that the restored sanity of the prisoner shall not be ascertained in any other way. If it ex-

pressly committed the matter exclusively to the voluntary exercise of the discretion of the superintendent, it might be subject to the objection urged.  But we find in it nothing that precludes the right of the prisoner to have a judicial inquiry made into the fact of restoration to sanity.  If the prisoner's friends have reason to believe that he has been restored to sanity, and is therefore no longer subject to restraint and treatment in the hospital for the insane, they would be entitled to a writ of habeas corpus to compel his production before a court where due inquiry could be had.  *Re Buchanan,* 129 Cal. 330, 50 L.R.A. 378, 61 Pac. 1120; *Gardner* v. *Jones,* 126 Cal. 614, 59 Pac. 126.  If found to be sane upon such inquiry, he would, instead of being discharged, be delivered into the custody of the criminal court for sentence in accordance with the verdict of guilty previously returned against him.  The appellant had the opportunity to raise this question upon the traverse of the return, and it was not denied him; but he voluntarily withdrew his traverse, and relied upon a demurrer which admitted the truth of his continued insanity.

It is argued under the second assignment of error that the permission of the superintendent to petitioner to leave the hospital in care of his brother, and his production in court and release on his recognizance was, in effect, a notice by the superintendent, and a finding by the court that he had been restored to sanity; wherefore his subsequent arrest and recommitment were without authority of law; in other words that the situation required proceedings *de novo* for a finding of lunacy and an order of commitment.

The return shows that petitioner was brought into court on October 12, 1908, where his motion for new trial was heard and overruled, and his recognizance taken for his appearance for sentence when required.  That he was "paroled by the court."  On the same day his condition was found improved, and for that reason he was temporarily discharged in care of his brother.  He was not discharged as cured.  And the return further shows that he has never been restored to sanity.  He was not found by the superintendent to be restored to sanity,

and no notice to that effect was given to the court. The court made no inquiry into his sanity, much less any adjudication to that effect. All that can be deduced from the action of the court and the superintendent is that the petitioner, while still insane, was a harmless lunatic, and might safely be suffered to be at large temporarily in the care of his brother. For causes not explicitly shown in the record, he was arrested and returned to the hospital. While these proceedings are subject to criticism as irregular, we do not perceive any ground that the petitioner has to compain of them. His sanity had never been restored; he had been, in an irregular way, permitted to go at large in care of a guardian, and this permission or "parole," as it has been called, has been terminated. There was no occasion for a new inquiry. There was no new adjudication and commitment. He is held under the former order and commitment, as a prisoner might be who had escaped, or had been permitted temporarily to go at large.

If the appellant's next friend has reason to believe that he can now prove his restoration to sanity, he can, as above intimated, have an opportunity to obtain the necessary hearing thereof. If then shown to be sane, he would be delivered into the custody of the criminal court for sentence. If found to be still insane, he would be recommitted to the hospital.

The order discharging the writ and remanding the petitioner must therefore be affirmed.                    *Affirmed.*