THE STATE OF NEVADA, ON THE RELATION OF DALE EUGENE SOLLARS (through his attorney, Bert Goldwater), RELATOR, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, IN DEPARTMENT No. 3 THEREOF, AND THE HONORABLE RYLAND G. TAYLOR, JUDGE THEREOF, RESPONDENTS.

No. 3850

March 25, 1955.                               281 P.2d 396.

*Bert Goldwater*, of Reno, for Relator.

*George M. Dickerson*, District Attorney, Las Vegas, for Respondents.

*Harvey Dickerson*, Attorney General, and *W. T. Mathews*, both of Carson City, amici curiae.

## O P I N I O N

By the Court, BADT, J.:

The briefs on file and the oral arguments of counsel for the respective parties and amici curiae indicate conflicting views, and consequently the necessity for clarification by this court, of the meaning and effect of our statutes governing the inquiry into the insanity of a

person charged with crime, his commitment to the hospital for mental diseases, suspension of proceedings against him during such commitment, his detention there until he becomes sane and the transfer of his custody, after be becomes sane, to the sheriff for trial or judgment, as the case may be. The applicable sections of N.C.L. 1929 are quoted in the margin.[1] As will be hereinafter noted, the particular section requiring clarification is sec. 11190.

An information was filed against Sollars in the Eighth judicial district court, Clark County, Nevada, October 29, 1953, charging him with murder on October 15, 1953. Thereafter a doubt having arisen as to the defendant's sanity, a jury trial was ordered by the court and the jury found Sollars to be insane for the purpose of standing trial. The court thereupon committed him to the hospital for mental diseases at Sparks, Washoe

---

[1]Sec. 11183. "An Act done by a person in a state of insanity cannot be punished as a public offense, nor can a person be tried, adjudged to punishment, or punished, for a public offense, while he is insane."

Sec. 11184. "When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if doubt shall arise as to the sanity of the defendant, the court shall order the question to be submitted to a jury that must be drawn and selected as in other cases."

Sec. 11185. "The trial of the indictment or information, or the pronouncing of the judgment, as the case may be, shall be suspended until the question of insanity shall be determined by the verdict of the jury."

Sec. 11187. "If the jury find that the defendant is sane, the trial of the indictment or information shall proceed, or judgment may be pronounced, as the case may be."

Sec. 11188. "If the jury find the defendant insane, the judge shall order the sheriff to forthwith convey him, together with a copy of the complaint, the commitment, and the physicians' certificate, if any, to the hospital for mental diseases; provided, the court deems his freedom a menace to public quietude. Proceedings against the defendant must be suspended until he becomes sane."

Sec. 11190. "If the defendant be received into the state hospital for mental diseases he must be detained there until he becomes sane. When he becomes sane, notice must be given to the sheriff and district attorney of the county of that fact. The sheriff shall thereupon without delay, take the defendant and place him in proper custody, until he be brought to trial or judgment, as the case may be, or be otherwise legally discharged."

County, Nevada, "in charge of the superintendent thereof, as the law requires, and that he be detained until he shall become sane, and when be becomes sane, notice shall be given to the sheriff and district attorney of Clark County, Nevada, and he shall thereupon be delivered to the sheriff of Clark County, Nevada, without delay, and there detained in the custody of the said sheriff of Clark County, Nevada, until he shall be brought to trial upon the charge now pending against him, or otherwise legally discharged." It may be observed that this order closely followed the wording of sec. 11190. On September 4, 1954 Dr. S. J. Tillim, superintendent of the hospital, gave notice in writing to the district attorney and to the sheriff of Clark County that Sollars had become sane and called attention to the court's order of December 11, 1953 that Sollars should therefore be delivered to the sheriff and detained in the latter's custody until brought to trial or legally discharged.[2] The sheriff refused to accept custody and the district attorney refused to pursue the prosecution. Sollars, through his attorney, moved the district court on notice, on November 10, 1954, for an order setting the case for trial. The motion was supported, among other things, by the written notices from the superintendent of the hospital to the sheriff and district attorney, the affidavit of the superintendent and the affidavit of an independent psychiatrist. It was based upon the ground that the district attorney refused to bring Sollars to trial on the issue of his guilt or innocence in contravention of the earlier order of the court and in contravention of his constitutional right to a speedy trial. The court denied the motion,[3] and relator filed the

[2]The written notices from Dr. Tillim to the district attorney and the sheriff reported that an opinion had been obtained from the attorney general as to the meaning of the word "sane" as used in sec. 11190 and that the same meant: "When he has so far recovered as to appreciate the nature of the criminal proceedings against him and can assist in his defense in a rational manner." This definition is not challenged by either party.

[3]In the oral argument the district attorney contended that the

present petition for a writ of mandamus on November 22, 1954. Thereafter briefs were filed and the petition orally argued and submitted February 25, 1955.

Relator states his position simply. He says that this is a proceeding to start in motion the wheels of justice, which have become clogged in Clark County, to the end that defendant may have his day in court; that the refusal of the court and its officers to proceed is in direct violation of the statute, the court's order made pursuant thereto, and the superintendent's certification of sanity made thereunder. Amicus curiae, the attorney general of the State of Nevada, and his associate amicus curiae, an attorney who has just retired as attorney general after serving this state in that capacity for many years, agree with the position taken by relator and submit to this court their conclusion that the writ of mandamus should issue.

The respondent district judge and the respondent district court, appearing through the district attorney of Clark County, present the following reasons why the writ should not issue. It is first contended that since Sollars was adjudged to be insane through the findings of a jury in a judicial proceeding, he may not be held sane for the purposes of trial through the ex parte conclusion of the superintendent of the state hospital, but only through a judicial restoration to sanity. The Supreme Court of California, under constitutional and statutory provisions similar to our own, has held this contention to be without merit. Gardner v. Jones, 126 Cal. 614, 59 P. 126; In re Buchanan, 129 Cal. 330, 61 P. 1120, 50 L.R.A. 378; People v. Superior Court, 4 Cal.2d

---

motion to set was in any event properly denied because Sollars had not yet been arraigned and that no issue had been made in the district court. This fact nowhere appears in the record, nor in the return of respondents nor in the respondents' brief. It is nowhere indicated that it formed any part of the basis of the court's refusal to set the case for trial. A trial in the district court on the question of the guilt or innocence of Sollars will of course be preceded by a plea of not guilty.

136, 47 P.2d 724; Ex parte Phyle (Matthews v. Duffy, Warden), 30 Cal.2d 838, 186 P.2d 134. We agree with the reasoning and the conclusions reached in those cases.

Respondents too rely upon In re Buchanan, supra, and particularly upon the court's statement in that case that the question of unlawful restraint of the liberty of a citizen is, and must be as long as our present constitution endures, a judicial question to be determined by the courts. We do not understand that relator seriously questions such statement. To deny it would indeed be to deny the right of habeas corpus. But the fact that habeas corpus may lie to inquire into an alleged unlawful restraint is not determinative of the present issue. In Buchanan's case the superintendent refused to certify him as sane and refused to surrender his custody, and habeas corpus afforded the proper remedy. In the instant case the superintendent certified Sollars as sane and has used every effort to divest himself of his custody and restraint and to transfer the same to the district court and its officers. Relator has consistently and repeatedly conceded in his briefs and oral argument the right of the respondent court again to order a jury inquiry if doubt should arise as to the prisoner's sanity.

It is next contended that a construction of our statute which permits Sollars to be returned for trial upon the ex parte certification of the hospital superintendent would make the statute violative of the due process clause of the constitution of the State of Nevada and of the constitution of the United States. The contention is without merit. Nobles v. Georgia, 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515; Ex parte Phyle, supra. As quaintly remarked by Traynor, J., speaking for the majority of the court in the latter case [30 Cal.2d 838, 186 P.2d 140], there is no merit to the contention "that the adjudication that defendant was insane at the time of his trial gave him a vested right to the status of an insane person."

Respondents contend that if upon the superintendent's certification the sheriff must resume custody and if upon the court's order inquiry by a jury should result in a determination that Sollars is insane for the purposes of trial and he is again committed to the state hospital, a circuitous process would occur that might be repeated again and again, and that this danger can be obviated only by a judicial determination preceding his recommitment to the custody of the sheriff. The first answer to this contention is that it does not necessarily follow that a judicial determination would prevent such circuity. Nor can we indulge the presumption that following the superintendent's determination of sanity, a jury will find contra. Neither can we indulge the presumption that such circuity will result because of personal or political differences between the local county officials and the superintendent of the state hospital. As aptly remarked by counsel in oral argument, we cannot presume intellectual dishonesty as governing the official actions of any of the officials involved. We may note also that this contention was rejected in Ex parte Phyle, supra.

Respondents point to our statutory provisions relating to insane and incompetent persons and urge the necessity of proceeding thereunder to establish a restoration to sanity. The distinction of such proceedings from the present proceedings under the criminal practice act is so clear as not to warrant discussion. See People v. Superior Court, supra.

It is next contended that the legislative intent expressed in sec. 11190 for the delivery of the defendant by the superintendent of the hospital to the sheriff "when he [the defendant] becomes sane" must necessarily have contemplated a judicial determination of such sanity. Such contention is without merit. To credit the legislature with an intention that a judicial proceeding must follow the superintendent's certification of

sanity, when it laid down no procedure, no venue, no jurisdiction, no designation of the parties to such a proceeding, or how, when, where or under what conditions, or in what court or before whom it should be initiated and conducted, and without even a mention of the contemplation of such a proceeding is without justification.

Respondents contend that mandamus is not the proper remedy. But if, as is clear from the views expressed by us, it is the clear, statutory, mandatory duty of the district court to proceed with the trial of Sollars on the issue of his guilt or innocence in the absence of a doubt that should promote a further order for a jury inquiry into his sanity, if in short, the district court wrongfully refuses to accept jurisdiction, then under numerous and consistent holdings of this court, mandamus is a proper remedy.

We are satisfied that, nothing appearing other than the superintendent's certification that Sollars is sane for the purpose of trial, under a definition of sanity unopposed by any party to this proceeding, it is the duty of the respondent court and judge (and the officers of the court under his and its direction) to proceed without undue delay with the trial of said defendant in the case of The State of Nevada v. Sollars, unless, under sec. 11184, N.C.L., the court should order the question of the defendant's sanity again submitted to a jury in which event further proceedings be had in accordance with the provisions of sec. 11185, N.C.L. et seq.; and that if arraignment, plea or other proceedings must necessarily be had prior to such trial, the same be had as provided by law.

It is ordered that the writ of mandamus as prayed for issue forthwith in accordance with the foregoing opinion.

MERRILL, C. J., and EATHER, J., concur.