Argued April 13, 1961, affirmed February 21, 1962

# SYPHERS *v.* GLADDEN
## 368 P. 2d 942

*Charles D. Burt,* Salem, argued the cause and filed a brief for appellant.

*Harold W. Adams,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, Salem, and Robert G. Danielson, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

McALLISTER, C. J.

The petitioner, Glen Henry Syphers, a prisoner in the state penitentiary, filed in the circuit court for Marion county a petition for relief under the Post-Conviction Hearing Act, ORS 138.510 et seq. Petitioner attacks, on two grounds, the validity of his conviction of rape upon a daughter and his sentence of 20 years for said crime.

Petitioner asserts, first, that at the time of his trial and sentence in Lane county, he was mentally

ill and incompetent to understand the nature of the proceedings against him and to assist in his defense, and second, that since he was at the time of his trial and sentence on parole from the Oregon State Hospital the court, because of the provisions of ORS 426.290(2), had no jurisdiction to try or sentence him for the crime charged.

The defendant first moved the court to require petitioner to attach to his petition the records or other documentary evidence supporting the allegations of the petition as required by ORS 138.580,[1] or to state why they were not attached. The court allowed the motion and pursuant thereto the petitioner filed as exhibits photostatic copies of the proceedings against him in Lane county, and other relevant records. Thereafter the defendant demurred to the petition, the demurrer was sustained, petitioner refused to plead further and the proceeding was dismissed. Petitioner appeals.

---

[1] 138.580. "The petition shall be verified by the petitioner. Facts within the personal knowledge of the petitioner and the authenticity of all documents and exhibits included in or attached to the petition must be sworn to affirmatively as true and correct. The Supreme Court, by rule, may prescribe the form of such verification. The petition shall identify the proceedings in which petitioner was convicted and any appellate proceedings thereon, give the date of entry of judgment and sentence complained of and identify any previous post-conviction proceedings that the petitioner has undertaken to secure a post-conviction remedy, whether under ORS 138.510 to 138.680 or otherwise, and the disposition thereof. The petition shall set forth specifically the grounds upon which relief is claimed, and shall state clearly the relief desired. All facts within the personal knowledge of the petitioner shall be set forth separately from the other allegations of fact and shall be verified as heretofore provided in this section. Affidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition, or the petition shall state why they are not attached. Argument, citations and discussion of authorities shall be omitted from the petition but may be submitted in a separate memorandum of law."

From the petition and the exhibits thereto it appears that in January, 1955, Syphers was charged by an information filed in the district court for Lane county with the crime of rape upon a daughter. On January 12, 1955 Syphers was arraigned in the circuit court for Lane county, waived indictment by the grand jury and entered a plea of guilty to the district attorney's information charging him with said crime. Syphers was not represented by counsel during said proceedings.

The court then ordered that the imposition of sentence be continued pending an examination of Syphers by a psychiatrist pursuant to ORS 137.112 to 137.116. Those statutes provided that every person convicted of certain sex crimes should be given, upon conviction and before sentence, a complete psychiatric examination by a psychiatrist appointed at the request of the court by the superintendent of the Oregon State Hospital.

The statutes required the psychiatrist to file with the court within 60 days after the conviction a written report of his findings and conclusions relative to the examination, and other information specified in the statutes. The clerk of the court was required to send a certified copy of the report by registered mail to the convicted person, his attorney, and the district attorney.

The statutes provided also that upon the filing of the report by the examining psychiatrist the court should set a time for a presentence hearing, and that at the hearing both the district attorney and the convicted person could examine the psychiatrist who had filed the report.

Syphers was admitted to the Oregon State Hospital at Salem, on January 14, 1955, and remained there

until about April 30, 1956. No report of an examining psychiatrist was filed with the court within 60 days after the conviction, as required by the statute. From a later report dated May 24, 1956 it appears that the hospital staff in February, 1955 decided that Syphers should remain in the hospital for treatment.

The record contains no copy of any communication to the court from the hospital staff recommending that Syphers remain in the hospital for treatment, and no order of the court authorizing the hospital to retain Syphers. The record does contain a copy of an order entered on March 11, 1955 by the circuit court for Marion county adjudging Syphers to be a mentally ill person and committing him to the Oregon State Hospital. It will be noted that this order was entered after Syphers had entered a plea of guilty and was already in custody of the Oregon State Hospital for a psychiatric examination ordered by the circuit court of Lane county.

On about April 27, 1956 the district attorney of Lane county was advised by the hospital that Syphers could be picked up at any time and would be held in the hospital in the meantime. The record is not clear as to the exact date Syphers left the hospital, but we regard this discrepancy as immaterial. In any event, on May 3, 1956 Syphers was brought before the circuit court for Lane county for sentencing on his plea of guilty which had been entered on January 12, 1955. The court postponed the imposition of sentence and requested the State Board of Probation and Parole to furnish a presentence investigation.

A psychiatrist's report, dated May 24, 1956, was received by the court on May 29, 1956, and it appears from the record that certified copies of the report were mailed by the county clerk of Lane county on May 31,

1956 to the district attorney, to Syphers, and to his attorney. The report, after reciting some of Syphers' earlier history, concluded as follows:

"The patient was described on admission as a medium-sized, balding white male of ruddy complexion, who appeared to be in good physical health. Nothing of significance was found on physical examination, other than a slight inability to completely extend his right arm at the elbow. Neurological, roentgenological and further laboratory examinations did not reveal any significant findings. He was of normal intelligence (I.Q. of 93). He showed some anxiety and depression and spoke in a flat tone. He described bizarre physical symptoms, stating that his throat muscles contracted and cut off his wind. At times, the patient became disturbed and his surroundings seemed to turn sideways. It was felt that his thinking was illogical to a degree that he seemed unable to clearly distinguish between the act of raping his daughter and his fantasies about it. In view of this type of disorder in his thinking, a diagnosis of "Chronic Undifferentiated Schizophrenia" was agreed upon by the Hospital Staff Board when his case was presented on February 10, 1955. The Board further recommended that the Court be advised that it was felt that this patient should remain in the Hospital for treatment. It was also felt that his confusion would seriously interfere with his ability to assist in his own defense.

"The patient remained on Ward 43 during the remainder of his stay in the Hospital, first under the care of Dr. Cotterell until January 21, 1956; then under the care of the undersigned until his parole on May 11, 1956. When I first became acquainted with Mr. Syphers, he did not demonstrate any of the confusion or disorganization of his thinking, nor the bizarre physical complaints, presented upon admission. Several interviews with this patient over the following three months did not indicate any change of status. The patient

seemed clearly able to distinguish between his fantasies and reality; to deal with a real world in a rational manner.

"On April 19, 1956, the patient's case was again presented to the Board for disposition. The Board unanimously agreed that the patient had regained his mental health and was now of sound mind. It is my opinion that he does not represent a menace to society. This opinion was supported by the Board unanimously. The District Attorney was informed of this decision and requested that the patient be detained in the Hospital until he could be taken into custody. This request was complied with."

It next appears that on July 2, 1956 Syphers appeared in court with his attorney and asked leave to withdraw his waiver of indictment and plea of guilty. The request was granted and an order entered which reads in part as follows:

"IT APPEARING to the Court that said defendant did not have counsel representing him at the time of the arraignment and plea, and

"IT FURTHER APPEARING to the Court there was some question as to said defendant's sanity at the time of the arraignment and entry of plea,

"THEREFORE, IT IS ORDERED, that said waiver of indictment and plea of 'Guilty' be now withdrawn."

On July 31, 1956 an indictment was returned by the Lane county grand jury charging Syphers with the crime of rape upon a daughter. On August 1, 1956 Syphers was arraigned and entered a plea of not guilty.

On October 19, 1956 Syphers filed a written notice, pursuant to ORS 135.870 that he proposed to show in

evidence that he was insane or mentally defective at the time of the alleged commission of the act charged.

On October 23 and 24, 1956 trial was held resulting in a verdict of guilty. On October 25, 1956 Syphers was sentenced to a term in the penitentiary of not to exceed 20 years.

On October 30, 1956 Syphers' attorney filed a motion for an order to require Lane county to pay Dr. James W. Brooke a fee of $100 for appearing as an expert witness for the defendant at the trial of said case, which motion was allowed.

The record contains a copy of a certificate by the superintendent of the Oregon State Hospital certifying: "that Glen Henry Syphers, a patient in said hospital, who was admitted from Lane County on January 14, 1955, is discharged from said hospital on this 1 day of June, 1957, under authority of ORS 426.300. Patient is: Competent. Paroled May 11, 1956. Left: April 30, 1956." It does not appear whether an order has ever been entered by the circuit court for Marion county, which committed Syphers, declaring that he is competent. From the record it would appear that Syphers has been in the penitentiary since his conviction and sentence on October 25, 1956, and there is no explanation as to why a certificate of discharge from the state hospital was dated June 1, 1957.

In his petition Syphers alleges, for his first ground for relief, that from his adjudication as a mentally ill person by the circuit court for Marion county on March 11, 1955, until the superintendent of the Oregon State Hospital formally certified his discharge on June 1, 1957, he was mentally ill, incompetent and unable to assist in his defense, and unable to understand the nature of the proceedings against him. He further alleges that his rights to a fair and impartial trial un-

156

der the Constitution of the United States and of the State of Oregon were violated by his trial, conviction and sentencing during said period of his alleged mental incapacity.

█ Petitioner's contention that at the time of his trial he was insane or mentally defective to the extent that he was unable to understand the proceedings against him, or to assist in his defense, may be raised collaterally in a post-conviction proceeding, either statutory or common law. *Coffman v. Gladden,* 73 Adv Sh 689, 691, 229 Or 99, 366 P2d 171 (1961); *Horace v. Culver,* 111 So2d 670 (Fla 1959); *Brown v. The People,* 8 Ill2d 540, 134 NE2d 760 (1956); *People v. Boehm,* 309 NY 362, 368, 130 NE2d 897 (1955); *United States v. Thomas,* 291 F2d 478, 480 (6th Cir 1961); *Taylor v. United States,* 282 F2d 16, 21-23 (8th Cir 1960); *Bell v. United States,* 269 F2d 419 (9th Cir 1959); *Brown v. United States,* 267 F2d 42 (5th Cir 1959); *Bishop v. United States,* 223 F2d 582, 584-85 (DC Cir 1955), *vacated and remanded per curiam* (1956) 350 US 961, 76 S Ct 440, 100 LEd 835.

█ The principal question presented by this appeal, although it has not been mentioned in the briefs of either party, is the effect, if any, on the jurisdiction of the circuit court for Lane county of the adjudication by the circuit court for Marion county that Syphers was mentally ill. Without deciding precisely when its jurisdiction attached, we are certain that the circuit court for Lane county had jurisdiction of Syphers on January 12, 1955 when he waived indictment and entered a plea of guilty to the felony with which he was charged in that court. That jurisdiction extended to all matters incident to the disposition of the criminal charge, including the determination of any question concerning the sanity of the accused, either at the time

of the commission of the crime or at the time of trial. The circuit court for Lane county could not be ousted of its jurisdiction over a person held by it to answer a criminal charge by the finding of another court in a civil proceeding that the person accused of crime was mentally ill. This seems to be the uniform holding of the courts which have considered the question. *Crews v. State,* 143 Fla 263, 196 So 590 (1940); *Mc-Griff v. State ex rel Graham,* 135 Ga 259, 69 SE 115 (1910); *State v. Murphy,* 205 Ia 1130, 217 NW 225 (1928); *Quaintance v. Lamb,* 185 Ia 237, 170 NW 398 (1919); *Stone v. Conrad et al,* 105 Ia 21, 74 NW 910 (1898); *State v. Gould,* 40 Kan 258, 19 P 739 (1888); *State v. Hagerty,* 152 Minn 502, 189 NW 411 (1922); *Skinner v. State,* 198 Miss 505, 23 So2d 501 (1945); *Davis v. State,* 151 Miss 883, 119 So 805 (1928); *Hawie v. Hawie,* 128 Miss 473, 91 So 131 (1922); *State v. England,* 328 SW2d 732 (Mo App 1959); *State ex rel Lamar v. Impey,* 365 Mo 437, 283 SW2d 480 (1955); *State v. Peterson,* 90 Wash 479, 156 P 542 (1916). See also, Weihofen, Mental Disorder as a Criminal Defense 450.

It is not necessary to hold that the Marion county insanity adjudication was void. It is only necessary to hold that as to the jurisdiction of the circuit court of Lane county such adjudication was of no force and effect. See *State v. Hagerty,* supra; *State v. Peterson,* supra; *State ex rel Lamar v. Impey,* supra. The question of Syphers' insanity remained within the jurisdiction of the court in which the criminal case was pending until final judgment. See *McGriff v. State ex rel Graham,* supra; *State v. Gould,* supra; *State v. Hagerty,* supra; *State v. Peterson,* supra.

■ It is true, of course, that insanity once shown to exist continues until the contrary is made to appear.

*State of Oregon v. Garver,* 190 Or 291, 305, 225 P2d 771, 27 ALR2d 105. This is not a case, however, in which the accused person has been adjudged insane before the crime was committed, or before he was charged with the commission thereof. In this case Syphers was in the custody of the law, subject to the exclusive jurisdiction of a competent criminal court before the adjudication of insanity in the probate court.

■ Since the circuit court of Lane county had jurisdiction to determine whether Syphers was competent to stand trial, it remains only to determine from the petition and exhibits whether there was any error in the exercise of that jurisdiction. The applicable statute is ORS 136.150,[9] which provides that if before or during the trial the court has reasonable ground to believe that the accused is insane or mentally defective, it should hold a hearing to determine his condition. This statute is declaratory of the common law. See 5 Wharton's Criminal Law and Procedure 159, § 2020; Weihofen, Insanity as a Defense in Criminal Law 333 et seq.; 14 Am Jur, Criminal Law 801, § 44; 44 CJS 283, Insane Persons § 127.

This court has held that whether there is reasonable ground to believe that a hearing is necessary to determine the accused's mental condition is a question

---

[9] ORS 136.150. "If before or during the trial in any criminal case the court has reasonable ground to believe that the defendant, against whom an indictment has been found or an information filed, is insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately fix a time for a hearing to determine the defendant's mental condition. The court may appoint one or more disinterested qualified experts to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant's mental condition may be introduced at the hearing by either party."

addressed to the sound discretion of the trial court. *State v. Taylor,* 224 Or 106, 110, 355 P2d 603 (1960); *State v. Nelson,* 162 Or 430, 441, 92 P2d 182 (1939). The same rule was applied before the enactment of ORS 136.150. *State v. Stone,* 111 Or 227, 231, 226 P 430 (1924). The same rule is applied elsewhere. *People v. Merkouris,* 52 Cal2d 672, 344 P2d 1 (1959), cert. den., 361 US 943, 80 S Ct 411, 4 LEd 364 (1960); *State ex rel Sollars v. Dist. Ct.,* 71 Nev 98, 281 P2d 396 (1955); *State v. Lucas,* 30 NJ 37, 73-4, 152 A2d 50 (1959); *Commonwealth ex rel Smith v. Ashe,* 364 Pa 93, 104, 71 A2d 107 (1950), cert. den., 340 US 812, 71 S Ct 40, 95 LEd 597 (1950); *State v. Violett,* S.D. 111 NW2d 598 (1961).

We have found nothing in the record to indicate an abuse of discretion in this case. The court had before it a recent report from the state hospital advising that the hospital board had unanimously agreed that Syphers "had regained his mental health and was now of sound mind." The record shows that Syphers was represented by counsel, claimed that he was insane when the alleged crime was committed, and called a doctor to testify in his defense. The record contains nothing to indicate that either Syphers or his counsel at any time suggested to the court that Syphers was not competent during the trial. In this proceeding Syphers relies solely on the supposed legal effect of his adjudication of insanity by the Marion county probate court, and his petition contains no independent allegation that he was in fact incompetent to stand trial.

The record does show affirmatively that the court was alert to the problem of Syphers' mental condition. This is demonstrated by the order of July 2, 1956 permitting Syphers to withdraw his plea of guilty

in part because "there was some question as to defendant's sanity at the time of the [original] arraignment and entry of plea." We think we may properly assume that if the court had entertained a doubt as to petitioner's sanity during the trial it would have inquired into his mental condition.

For his second ground for relief petitioner alleged in effect that ORS 426.290 deprives every court of jurisdiction to charge with a criminal offense, or try a person, while he is on parole from a state mental hospital. Upon oral argument counsel for petitioner stated that this case had been appealed so "that this court may construe the meaning of" subsection 2, ORS 426.290.⑧

Our holding that the circuit court of Lane county could not be ousted of its jurisdiction to determine petitioner's mental condition by the insanity adjudication of the probate court disposes of petitioner's second contention. The contention, in any event, is completely devoid of merit.

■■ ORS 426.290 was enacted by Chapter 18, Oregon Laws 1915, as part of an act to regulate "the discharge and paroling of patients confined at the state hospitals having charge of insane persons and relating to certain liabilities of officers and institutions." Subsection 2 requires the hospital to receive a paroled pa-

---

⑧ ORS 426.290. "(1) Every patient paroled shall be received back into the hospital paroling him upon the complaint, in writing, of any citizen of Oregon made to the superintendent of the hospital. The complaint shall be sworn to before some officer qualified to administer an oath, if the acts complained of are such as to indicate that the patient should no longer be permitted to remain at large.

"(2) Every paroled patient must be received back into the hospital upon voluntary application to be admitted thereto. Every patient that is on parole shall be readmitted to the hospital without examination as to his sanity before any court or judge having jurisdiction over such matters."

tient upon his voluntary application and to do so without any further judicial inquiry as to his sanity at the time of readmission. The obvious purpose of Chapter 18, Oregon Laws 1915, was merely to provide an orderly administrative procedure for the discharge, parole and readmission of mental patients. Neither the title nor the body of the act contains the slightest indication of any legislative intent to impair the criminal jurisdiction of any court over a patient while on parole from a state mental hospital. The act has never been so construed, and to our knowledge, this is the first time that such a construction has even been suggested. Petitioner cites no authority for his contention.

We conclude that the trial court did not err in sustaining the demurrer to the petition and the judgment is affirmed.