*Byington pro se.*

*Clark & Bro.* for the appellee.

---

## THE STATE OF IOWA V. ARNOLD.

12b 479
105   26
12 479
Case 2
131 604

1. CONTINUANCE IN CRIMINAL ACTION. A defendant is not entitled as a matter of right, under § 3006, Revision of 1860, to a continuance of a

cause to the term next after that at which the indictment is found. For good cause the court may order a continuance.

2. APPLICATION FOR CHANGE OF VENUE. Applications for change of venue on the ground of prejudice either of the judge or the people are addressed to the sound legal discretion of the court; and though the averments of the affidavits are in the very language of the statute (Rev. 1860, § 4729,) the Supreme Court will not interfere unless it is clearly shown that that discretion has been improperly exercised. *The State of Iowa* v. *Nash and Redout*, 7 Iowa 347, and *The State of Iowa* v. *Mooney*, 10 Ib. 506, were decided under a different statute and are not in conflict with these views.

3. CRIMINAL LAW: INSANITY: INQUIRY. An inquiry as to the mental condition of a prisoner under §§ 5015-19, Revision of 1860, should be limited to the time when he appears for arraignment, or to the occasion which renders such inquiry proper, and should not relate to the time at which the offense of which he is accused was committed.

4. SAME. In determining whether a reasonable doubt exists, before empanelling a jury to make the inquiry, the court is not limited to the case made for the prisoner by his counsel or other persons, but may in his discretion investigate the matter thoroughly and take into consideration all the circumstances. If such doubt is raised by the circumstances, the inquiry should be ordered, when there is no reasonable ground for such doubt, it should be refused.

5. SAME. The sufficiency of evidence to raise a doubt as to sanity discussed.

6. JURY: CHALLENGE. It is not good ground for challenge to the panel of a jury, that the jurors heard the evidence submitted to the court, to raise a doubt as to the prisoners insanity or imbecility. (Rev. 1860, § 4762.)

7. QUESTIONS TO JURORS. The counsel for the prisoner propounded this question to jury: "If the defense in the case should be the insanity of defendant, have you formed or expressed an opinion upon the subject?" *Held*, that the question was objectionable in this, that it states only a supposed defense for the purpose of showing actual bias.

8. CRIMINAL LAW: WEIGHT OF PRESUMPTIONS. The presumption arising from the finding of stolen property in the hands of the accused, immediately after it was taken, may be partially rebutted or lessened and still be sufficient to warrant a verdict of guilty.

9. CROSS-EXAMINATION. A witness introduced by the defendant testified that his (defendant's) reputation " was divided." The prosecuting attorney, on cross-examination, interrogated him as to " what particular acts of his life he had heard spoken of," whereupon the witness " pro-

ceeded to relate various acts of petit larceny he had been accused of by report during the last five or six years." . *Held*, that the court did not err in refusing to exclude the evidence from the jury. The difference between this case and *Gordon* v. *The State of Iowa*, 3 Iowa 410, pointed out.

*Appeal from Henry District Court.*

THURSDAY, DECEMBER 19. .

LARCENY. Defendant was convicted, and appeals.

*F. Semple* for the appellant, contended; 1. The defendant was entitled to a continuance through one vacation to enable him to prepare his defense, § 3006, Revision of 1860. 2. The court erred in refusing to change the venue on the application alleging prejudice in the mind of the court. *Trulock* v. *The State of Iowa*, 1 Iowa 515; *Gordon* v. *The State of Iowa*, 3 Ib. 410; *The State of Iowa* v. *Mooney*, 10 Iowa 506. 3. The venue should have been changed on the ground of the prejudice of the people. *The State of Iowa* v. *Mooney, supra, The State of Iowa* v. *Nash and Redout,* 7 Iowa 347. 4. A jury should have been called to determine the question of insanity. Revision of 1860, § 5015. 5. The jurors who heard the evidence on the question of insanity, should not have been permitted to act in the trial of defendant, Revision of 1860, §§ 4770, 4773. 6. The evidence as to rumors attributing particular acts of petit larceny to the defendant should have been excluded. *Gordon* v. *The State of Iowa*, 3 Iowa 410.

*C. C. Nourse*, Attorney General, for the State. Unless the District Court abused the discretion vested in it in refusing a change of venue, this court will not interfere. *Gordon* v. *The State of Iowa*, 3 Iowa 410; *The State of Iowa* v. *Barrett*, 8 Ib. 537. The opinion which disqualifies a wit-

ness must be an unqualified one. Code of 1851, § 4771, part 8; *The State of Iowa* v. *Thompson*, 9 Iowa 188.

WRIGHT, J.—I. Under § 3006 of the Rev. a defendant is not entitled as a matter of right to a continuance of a cause to the term next after that at which the indictment is found. For good cause the court may order the continuance. Granting the rule to be otherwise, however, it could not avail defendant in this case, for the reason that upon his application he was granted a continuance. If there was error therefore in refusing his motion, without the showing of cause, he was not prejudiced. He may have been put to trouble and inconvenience, but inconvenience does not necessarily imply or prove error.

II. It is in the next place urged, that the court erred in refusing to change the venue. The grounds alleged reach the judge, and then refer and rely upon an alleged excitement and prejudice against defendant in the county. The latter cause is verified by four persons, in addition to the oath of the prisoner, as required by § 4729 of the Revision.

The law is, that the court, in the exercise of a sound discretion, must decide the matter when fully advised, according to the very right of it (§ 4733). This language is, in legal substance the same as that used in § 3272 of the Code of 1851. And under this it was held, that we could not interfere with this discretion, unless it is clearly shown to have been improperly exercised. *Gordon* v. *The State*, 3 Iowa 411; *Same* v. *Barrett*, 8 Ib. 537. And this rule applies whether the application is grounded upon the alleged prejudice of the judge or the excitement and prejudice of the people of the county. In either event the court below is held to the exercise of a sound (legal) discretion and the prisoner can not demand the change, as a matter of strict legal right, though he may aver in the very language of the

statute, the prejudice of the judge. The cases of *Nash &*
*Redout* v. *The State*, 7 Iowa 347 and *Mooney* v. *Same*, 10
Ib. 506, were decided under the Statute of 1857, p. 389,
and are not in conflict with the above views. In this case
there is nothing to satisfy us that the discretion was abused,
and we cannot say therefore that there was error in over-
ruling the motions for change of venue.

III. The law provides that when a defendant appears for
arraignment, trial, judgment or any other occasion when
required, if a reasonable doubt arises as to his insanity, the
court must order a jury to be impanelled, to inquire into
the fact. The proceedings are required to be suspended
until the question is determined by the jury. If the verdict
is in favor of his sanity, the trial proceeds, if otherwise, the
proceedings are to be suspended until he becomes sane.
(§§ 5015–16–18–19.) Under this statute, the court is to
inquire into the prisoner's mental condition at the time he
appears for arraignment, or any other occasion when re-
quired, and not at the time of the commission of the offense.
In determining whether a reasonable doubt exists as to his
sanity, before empaneling the jury, the judge is not confined
alone to the case made for the prisoner by his counsel; nor
to suggestions to that effect made by his relations or other
persons for him, but may in his discretion investigate the
whole matter, thoroughly, take into consideration all the
circumstances, obtain all the light reasonably attainable and
from all the facts thus developed, determine whether the
necessity exists for the inquiry. The statute was enacted
out of abundant and tender regard for the rights of the
accused, but the inquiry should not be allowed, if from all
the circumstances there is no reason to doubt his sanity.
If such doubt does arise the inquiry should be promptly and
thoroughly made. And this because it is the dictate of hu-
manity and the command of the law.

In this case the testimony as to the sanity of the accused is all before us, and after examining it carefully, we are brought to the conclusion that there was no error in refusing the proposed investigation. There is some testimony tending to show that prior to the alleged larceny, he acted strangely ; and that since, his manner occasionally indicated mental imbecility. There is none, however, showing insanity at the time he appeared for trial. This was some five months after the commission of the offense. The testimony not . only did not show insanity, but we can see nothing tending to show it at that time. The legal presumption is that he was sane. This presumption should be rebutted, and the reasonable doubt created by the prisoner, or from a consideration of the testimony and circumstances presented. To do this, evidence of mere incapacity to fully understand and comprehend all his legal rights ; and to make known in the most succinct and intelligent manner to his counsel all the facts material to his defense, is not sufficient. A doubt must be raised whether at the time there is such mental impairment, either under the form of idiocy, intellectual or moral imbecility, or the like, as to render it probable that the prisoner can not, as far as may devolve upon him, have a full, fair and impartial trial. If insanity existed at the time of the commission of the offense, of course it presents a different question, availing as it would the prisoner on his final trial. So, if his mental condition has been such in the interim as to prevent the preparation of his defense, it might be a good ground for a continuance. But if there is no room for a reasonable doubt on the subject at the time he is arraigned for trial, or on any other occasion when he is required to appear, he can not demand the investigation contemplated by the statute.

IV. It was no good cause of challenge to the panel of trial jurors, that they may have heard the evidence on the subject of prisoner's insanity introduced on the investiga-

tion of the subject by the court. Such a challenge can be interposed under our law, only on the ground that the jurors were not selected, drawn or summoned as prescribed by law. (§ 4762). Not only so, but the inquiry to be made by the jury on this subject, related to the prisoner's mental condition, at the time of the commission of the offense, or as affecting the question of his guilt or innocence, and not his insanity at the time of the trial. The action of the court could not reasonably have concluded the minds of the panel against the prisoner, as to his condition at the time of the alleged larceny.

V. The counsel for the prisoner propounded this question to the jury: "If the defense in this case should be the insanity of defendant, have you formed or expressed an opinion upon this subject?" To this inquiry the state objected, the objection was sustained, and this ruling is now assigned as error.

That the inquiry would be proper under some circumstances, we think is very clear. We hardly think it would be a safe rule, however, to permit counsel to state a defense that they may or not make, and base thereon an inquiry into the expressed or formed opinion of jurors. Suppose that jurors state that they have, then if the inquiry is pertinent or proper, they should be excluded. And though the defense should not be made on the trial, the defendant has had the advantage of an improper challenge. If the inquiry is correct as to insanity, so it is as to any defense special in its nature, that counsel may state that they propose making. The better rule is to direct the investigation to the general question of opinion as to the guilt or innocence of the prisoner. The purpose of the inquiry is to ascertain the existence or non-existence of actual bias. This is shown when it appears that the juror has that state of mind, which prevents him from acting with entire imparti-

ality.   And this state of mind must be ascertained by directing his attention to the offense and defense as a whole. This is certainly the safer and better rule as applied to the general inquiry.   There is no objection to counsel changing the form of the inquiry, so as to bring to the mind of jurors facts, circumstances and even hypothetical cases, and thus fully present his right to challenge for cause.   It is very different, however, when they state a supposed case, in the first instance, and base thereon a right to challenge for actual bias.   And we are the more reconciled to this rule as applied to this case, for the reason that it does not appear that the defense suggested was relied upon, on the trial.

VI. The refusal of certain instructions is next assigned as error.   And here we labor under the difficulty of having to determine upon their correctness or incorrectness, without having the testimony before us, to which it is claimed they were applicable.   Upon this ground alone we are justified in overruling the assignment.   Thus the predicate of one instruction is, that the proof of guilt consisted in the fact of finding the stolen property in the prisoner's possession immediately after they were taken.   And yet that such was the proof, we have no means of knowing.   Not only so, but the instruction is not correct under any state of facts. It is claimed that if all the circumstances were such as to *lessen* the presumption of guilt arising from the possession of stolen goods, the defendant should be acquitted. Such possession, it may be admitted, is not conclusive, but the presumption might be partially rebutted or lessened, and still not entirely so.   If not, then the jury would be justified in finding the prisoner guilty.

Then as to another instruction, counsel asked the court to define what constitutes larceny, and in doing so lost sight of the definition, when the possession is acquired by finding, but which the finder unlawfully appropriates to his own

use; when he fraudulently converts to his own use property entrusted to his care, and various other definitions covering special cases provided for in the statute. If, therefore, the instruction was correct as a general rule, we can not say that it was as applied to this case.

VII. For the purpose of establishing his good character, the defendant produced a witness who, on his examination in chief, stated that "his character was divided." The attorney for the State then asked the witness "what particular acts of his life he had heard spoken of." The witness "proceeded to relate various acts of petit larceny he had been accused of by report, during the last five or six years." Prisoner's counsel moved to rule out all the testimony elicted from the witness. The motion was overruled, and the ruling is assigned for error.

We do not think the ruling obnoxious to the objection discussed in *Gordon* v. *The State*, 3 Iowa 410. There the State was permitted, in cross-examination, "to go into an examination of particular instances of difficulties with individuals." From the statement and the facts of the whole case, indeed, it is evident that the witness was not confined to the mere statement of rumors or reports, but spoke of his actual knowledge of difficulties with particular individuals. Here the witness, on cross-examination, states that from report the prisoner had been accused of larceny in several instances. In view of the latitude which the court may legitimately allow, on cross-examination, we do not think the court erred in refusing to reject the testimony. In addition to this, the motion to exclude referred to the whole testimony. It would certainly have been erroneous to exclude what he said in the examination in chief.

Affirmed.