# J. W. STONE, by Attorney, v. W. F. CONRAD, District Judge, and the BOARD OF COMMISSIONERS OF INSANITY.

**Courts:** CRIMINAL PRACTICE: *Insanity.* The district court has jurisdiction to try the question of sanity of a person indicted for murder and order him to be confined in the insane department of the penitentiary, although an application by his father had been handed to the clerk of such court before the indictment was found, stating that he was insane, and asking that the commissioners of insanity investigate and take action in the case, where no action was taken by such commissioners until after the finding of the indictment and service of warrant—under Code, section 2279, providing that on a written application by any citizen stating that a person confined within any prison, within the county, charged with a crime, but not convicted thereof, nor on trial therefor, is insane, the commissioners shall cause such prisoner to be brought before them and direct his removal to one of the hospitals for the insane, if they find him to be insane, section 5540, providing, that if a defendant appears, in any stage of the trial of a criminal prosecution, and a reasonable doubt exists as to his sanity, further proceedings must be suspended and a trial had on that question, and section 225, providing, that the district court shall have "exclusive" jurisdiction of all criminal actions, except in cases where exclusive or concurrent jurisdiction is. or may, thereafter be conferred upon some other "court or tribunal."

## THURSDAY, APRIL 7, 1898.

THERE was an application to this court by plaintiff for a writ of *certiorari* commanding the defendants to certify up certain proceedings on their part, of which complaint was made. The writ issued, return was made thereto, and it is upon this record we are required to pass.—*Dismissed,*

*James A. Nugent* for plaintiff.

*James A. Howe* for defendants.

WATERMAN, J.—The facts, as they appear in the returns made by the defendants, are neither many nor complicated. On the fifth day of January, 1898, the plaintiff, J. W. Stone, shot and killed one Frank Kahler, in the city of Des Moines. On the tenth of that month, the father of Stone, acting through an attorney, handed the clerk of the district court a written application, signed by himself, and duly verified, charging that said Stone was insane, and asking that the commissioners of insanity investigate and take action upon the case. Nothing further was done in the matter at this time. The next fact of consequence in order of transpiring, was the finding and return of two indictments against Stone, charging him, respectively, with the crime of murder in the first degree, and assault with intent to commit murder. These indictments were returned by the grand jury on January 11, 1898, and immediately thereafter, on said day, warrants were issued thereon, and service upon Stone. After this, the application to the commissioners of insanity was filed, and thereafter the board met, on the day last mentioned; and upon a suggestion of want of jurisdiction on its part, because of the fact that Stone was held under warrants issued on said indictments, nothing was done at this time in the matter. On January 12th the board again met to consider the case, and it was decided that, for want of jurisdiction, no action would be taken, and an order was so entered. On the same day, Stone was arraigned in the district court, and counsel appointed to defend him. It appearing that a reasonable doubt existed as to his sanity, a trial was had in said court, by jury (Hon. W. F. Conrad, J., presiding), to determine the

matter, and a verdict was duly rendered declaring him
to be insane. Whereupon the court ordered him
confined in the department for the insane in the peni-
tentiary at Anamosa, and that further proceedings
against him on the indictments be suspended.

II.   It is contended by counsel for petitioner that
the district court had no jurisdiction to try the ques-
tion of Stone's sanity, or to make any order as to his
keeping; that the right to determine such matter and
make such an order rested exclusively with the commis-
sioners of insanity.

III.   Motions are made, both on behalf of the com-
missioners of insanity and the district judge, to dismiss
this proceeding. We need not set out the grounds on
which the motions are based. We intend disposing of
the controversy on its merits. The case, as presented,
calls for a construction of statutes relating to the juris-
diction of different tribunals. Under the changed pro-
visions of the present Code, to which we shall hereafter
refer, conflicts like this here presented may often arise;
and because of this we deem it best to overlook some
matters of form, and give a construction to the Code
provisions involved.

IV.   Section 2279 of the Code provides: "On a
written application made by any citizen, stating under
oath, that a person confined in any prison within the
county, charged with a crime but not convicted thereof
nor on trial therefor, is insane, the commissioners shall
cause said prisoner to be brought before them and if
they find that he is insane they shall direct his removal
to, and detention in, one of the hospitals for the insane.
*   *   *"   Section 5540 of the Code also relates to the
same subject-matter. It is as follows: "If a defendant
appears in any stage of the trial of a criminal prosecu-
tion and a reasonable doubt arises as to his sanity,
further proceedings must be suspended and a trial had

upon that question." Then follow provisions as to the
method of trial, and the disposition to be made of the
prisoner if found to be insane; it being provided that he
shall be confined in the department for the criminal
insane at Anamosa. The constitution (article 5, section
6) reads: "The district court shall be a court of law and
equity which shall be distinct and separate jurisdic-
tions and have jurisdiction in civil and criminal mat-
ters arising in their respective districts in such manner
as shall be prescribed by law." And in section 225 of the
Code the general assembly has said: "The district court
shall have general, original and exclusive jurisdiction
of all actions, proceedings and remedies, both civil and
criminal, except in cases where exclusive or concurrent
jurisdiction is or may thereafter be conferred upon
some other court or tribunal. * * *" We have set
out the various provisions of law that have a bearing
upon the matter under consideration. Their relevancy
will appear as we proceed. The district court has
exclusive jurisdiction in criminal matters, save where
otherwise conferred. Certainly it will not be contended
that the commissioners of insanity have any criminal
jurisdiction. When the jurisdiction of the district court
has once attached in a criminal case, it continues; and
it extends, by express terms of the statute, to the inves-
tigation of the sanity of a defendant. When does this
jurisdiction attach? it may very properly be asked. The
language of section 5540, quoted above, is, "If a defend-
ant appears *in any stage of the trial of a criminal prose-
cution,*" etc. Does this mean in any stage of the trial on
the indictment, or is it a phrase of broader meaning?
Can it be that after the jurisdiction of the district court
has attached, but before the trial of the case has actu-
ally begun, the commissioners of insanity can open the
jail door, take out the criminal defendant, and dispose
of him as they may think best? Surely this is not the

law. It must be that the jurisdiction of the district court attaches at the time of the service of a warrant issued upon an indictment, and that from this time it has control of the person of defendant, not only for the purpose of the criminal investigation, but for all matters incident thereto. The purpose of section 2279 was to vest the authority in the commissioners to inquire into cases of persons in prison charged with crime, and of whose mental condition there might be doubt. This is but reasonable and humane, in those cases in which no other tribunal has authority to make such investigation. But, when such authority is lodged elsewhere, neither reason nor humanity supports the claim of jurisdiction on the part of the commissioners. Section 2263 of the Code provides in substance, that the commissioners shall have cognizance of all applications for admission to the hospital, or for safe-keeping of insane prisoners, "except in cases otherwise specially provided for." Cases of defendants within the jurisdiction of the district court are "otherwise specially provided for." Even prior to the present Code there was an apparent conflict in the language of the two sections corresponding to those under consideration. Both sections were re-written, and their terms altered somewhat, by the Twenty-sixth general assembly. Under the Code of 1873 it was provided that if a person became insane after the offense and before conviction, the commissioners of insanity should have cognizance of the case. Section 1412. The district court had practically the jurisciction it now possesses, section 4620. If section 1412 meant literally what it said, the commissioners could interfere during the progress of a criminal trial, and take a defendant out of the custody of the district court. The writer questions if the general assembly has constitutional power to give such a tribunal authority to interfere with the action of the district court in

such matters, after its jurisdiction has one attached.
The apparent conflict of these sections under the Code
of 1873 worked no material harm, however; for the
district court, when a defendant was found insane, was
obliged to commit him to the hospital for the insane, so
that no contest, so far as we know, ever arose between
the two tribunals. But now the court, upon a finding of
insanity, must commit the defendant to the peniten-
tiary; and we may well expect, unless the law is settled
by an authoritative construction, other instances like
that at bar, when it will be sought to have the defend-
ant taken from the district court and put on trial before
a tribunal whose order can only be, if insanity is found
to exist, commital to one of the hospitals of the state.
In the case at bar the application for the hearing before
the commissioners was handed the clerk before the
indictment was found; but it was not filed, nor does it
appear that the commissioners met or took any cogni-
zance of it until after the indictment was returned and
filed, and the defendant placed under arrest. The juris-
diction of the district court had then attached. Some
little light is shed upon this controversy by the case of
*State v. Arnold*, 12 Iowa, 479. This case arose under the
Revision of 1860. The inquest of lunacy was then held
by the county judge and six jurors, but their jurisdic-
tion and that of the district court was defined substan-
tially as in the Code of 1873. It is held in this case that
the district court need not allow an examination of a
criminal defendant before conviction, if there is no
reasonable ground to doubt his sanity. And yet, if
counsel for plaintiff is right in his construction of the
law, while the district court could refuse to make such
investigation it could not refuse to permit another trib-
unal to do so. The change in the statute giving the
district court power to commit insane defendants to the
penitentiary at Anamosa, we think, must have been

made with a purpose. The general assembly must have had in mind such cases as that of plaintiff, who needs, not only treatment, but secure confinement, such as it is scarcely likely the hospitals are fitted to afford. We discover no error in the record before us. The action of the district judge and of the commissioners of insanity is approved, and this proceeding DISMISSED.