MARGARET MORRISON, Appellant, v. BRIDGET A. McLAUGHLIN et al., Appellees.

**WILLS:** **Mental Competency and Undue Influence—Jury Question.**
1 Testimony which would sustain a verdict of mental incompetency or a charge of undue influence necessarily carries the issue to the jury.

**EVIDENCE:** **Examination of Experts—Right to Frame Hypothetical**
2 **Question Without Interruption.** Counsel, in stating a hypothetical question bearing on the mental competency of a testator, has a right to frame it, without confusing interruption, in accordance with his own view of the law and facts.

**WILLS:**  Testamentary Capacity—Nonexpert on Mental Competency.
3  Nonexperts may, on a proper showing of acquaintance and observation, give an opinion as to the mental soundness of a testator.

*Appeal from Dubuque District Court.—*D. E. MAGUIRE, *Judge.*

MAY 6, 1921.

JAMES F. MCLAUGHLIN, a resident of Dubuque, Iowa, died, July 24, 1916. After his death, a written instrument, purporting to be his last will and testament, was admitted to probate. Thereafter, in September, 1918, the plaintiff, a sister and heir of the deceased's, brought this action at law, to contest the validity of the will on the alleged ground that, at the date thereof, the testator was mentally incompetent to make a valid will, and that the same was procured to be made by undue influence exercised over him by another sister, Bridget McLaughlin, a chief beneficiary of the instrument. There was a trial of the issues to a jury. At the close of the testimony, the court sustained the defendants' motion for a directed verdict in their favor, sustaining the validity of the will, and judgment was entered accordingly. Plaintiff appeals.—*Reversed.*

*Hugh Stuart* and *Matthew J. O'Brien,* for appellant.

*Nelson, Duffy & Nelson,* for appellees.

WEAVER, J.—The deceased was an unmarried man. He died at the age of 57 years, leaving as his heirs at law his mother, brother, and sisters. The mother has since died, intestate. His death was caused by a cancer which developed on his face in 1915, and slowly increased in malignancy until its fatal termination. In April, 1916, he went to the home of his sister Bridget, in Chicago, Illinois, where he received treatment, care, and nursing during the final two or three months of his life. Another sister, Margaret, who is plaintiff herein, was then living in Chicago, and assisted to some extent in waiting upon the sick man.

The will in controversy was executed at the home of Bridget on July 12, 1916, and the mental and physical condition of the

testator at that time and the circumstances attending the making and execution of the writing are the principal subjects of dispute in the testimony.

I. The verdict having been directed by the court, we have first to inquire whether, giving plaintiff the benefit of the most

1. WILLS: mental competency and undue influence: jury question.

favorable interpretation which the testimony will reasonably bear, she was entitled to go to the jury upon the alleged mental unsoundness of the testator or the alleged exercise of undue influence over the testator in the procurement of the will.

We have no hesitation in answering this question in the affirmative in both respects. If plaintiff's witnesses are to be believed, the condition of the testator during the last month of his life, both before and after the making of the will, was marked by a degree of stupor or coma. The doctor attending upon him says that the cancer had so extended as to involve the man's eye and ear, and, in the opinion of the witness, had eaten its way to the brain; and that deceased suffered intense pain. We quote from the doctor's testimony, as follows:

"On the day the will was drawn, his mind was not clear. I observed him to be in a state of coma on that day. On the morning before the will was made, I was there, and he was in a semiconscious condition; part of the time he would rouse up, and then go back into a stupor. In two or three minutes, he would wake up, if you would shake him, and go back and shut his eyes. He was that way the day the will was drawn."

There is much testimony which to some degree corroborates the physician. The doctor further testifies that Bridget solicited him to persuade the testator to make a will in her favor, saying that the estate was small, only a few hundred dollars. The witness says that, upon her request, he did suggest to deceased that he make a will, but deceased at first refused,— "didn't want to be bothered with it." Later, Bridget broached the matter to the doctor again, saying that she had trouble with her sister (plaintiff herein), and "didn't want anything left her in the will." According to the doctor, he did again urge the deceased to make a will in favor of the appellees, and finally induced him to consent. Bridget then requested the doctor to send a lawyer to draft the will. This was done. The lawyer,

a witness, after answering inquiries as to the circumstances attending the making of the paper, refused to express any opinion whether the man was able to remember his property and appreciate its extent and know what he wished to do with it. A neighbor, who called on the sick man on the day the will was made, and very soon after it was done, says the deceased "lay there in stupor; was unconscious." The only expert witness in the case, a practicing physician, of Dubuque, answering the plaintiff's hypothetical question, expressed the opinion that the deceased was of unsound mind. It is unnecessary for us to pursue this aspect of the case any further at this time. We do not say that the alleged mental unsoundness and alleged undue influence, or either of these allegations, have been established; but we do hold that, if these issues had been submitted to the jury, and a verdict thereon returned in plaintiff's favor, the court would not be warranted in setting it aside, as being without sufficient support in the evidence. That is as far as the court can go. The credit to be given the several witnesses and the weight and influence to be accorded to their testimony are for the jury alone.

II. The manner and method pursued in the introduction of the testimony are not to be commended. Nearly every page of the record of the trial is marred by a multitude of objections, many being of a trivial and inconsequential character, serving rather to confuse both court and jury than to develop the truth. We will extend the opinion to sustain the justice of this criticism by citing but one of the many instances found in the abstract. We refer to the record of the attempt of the plaintiff to examine her expert witness, Dr. Palen. Having produced the witness and shown his qualification to testify, counsel undertook to propound to him a hypothetical question, the matter in which would fill not more than a single printed page, or less. Before it was completely stated, it was interrupted by counsel on the other side, and a prolonged discussion took place between the several counsel and the court and the witness. The examining counsel was then set back, and once more undertook to frame his question, when, in the middle of a sentence, he was interrupted by the court, and another colloquy between

2. EVIDENCE: examination of experts: right to frame hypothetical question without interruption.

court, witness, and counsel on both sides ensued, with the result that the questioner was compelled to begin once more, only to be interrupted and blocked again by an objection that the inquiry was not properly framed, because it omitted something which the other side insisted should be included in the statement, or contained something not justified by the record. Again and again the questioner returned to the charge, only to be stopped and once more put to his paces around the circle. The story of this attempt to state what is, in effect, a simple question, to be answered in a single sentence, fills some 14 printed pages, showing nearly or quite as many vain attempts to get his hypothesis through the barrage. Finally, listening to the protests of plaintiff's counsel against the constant interruptions by opposing counsel, the court responded:

"Very well, I will allow you to form your questions, and I will sustain the objections if I remain here until tomorrow morning; and you may take your exceptions to the remarks of the court."

The trial court is, of course, without power to deprive counsel of their right to make a record by proper objections and exceptions; but the exercise of that right is subject to reasonable regulation. In the examination of an expert witness, we think it is the general, and certainly the most orderly, practice to permit the questioner to frame it to suit himself, putting into it such assumed facts as he believes are justified by the evidence. It is not within the privilege of opposing counsel to interrupt the questioner, and compel him to amend his interrogatory by adding thereto or taking therefrom some element or statement of fact which the objector insists is necessary to a complete hypothesis. *In re Will of Bever*, 93 Iowa 576; *Brooks v. City of Sioux City*, 114 Iowa 641.

If the questioner omits from his hypothesis a material element of fact, or includes therein a material fact of which there is no proof, he incurs the peril of hearing the court instruct the jury that expert evidence based upon an untrue or incorrect hypothesis is without value, and should be disregarded. We are not to be understood, however, as holding that a hypothetical question is not subject to proper objection; but counsel should be allowed to frame it according to his own view of the

fact and the law, without interruption, and objection withheld until the question is fully stated.

III.   Several nonexpert witnesses were produced by the plaintiff, who testified to their acquaintance with the testator and to their personal observation of his decline during the last months of his life.   These witnesses were severally asked to express their opinion of his mental soundness, basing their answers upon the matters to which they had testified.   In each case, the defendant's objections to the testimony were sustained, and the answers excluded.   The exclusion of this testimony was error.   The admissibility of nonexpert testimony as to mental soundness, when based on facts and circumstances stated by the witness, is well settled.   *Kostelecky v. Scherhart,* 99 Iowa 120; *In re Will of Norman,* 72 Iowa 84.

*3. WILLS: testamentary capacity: nonexpert on mental competency.*

The foregoing sufficiently indicates the necessity for a new trial, and the judgment appealed from is reversed, and cause remanded to the trial court.—*Reversed.*

EVANS, C. J., PRESTON, STEVENS, and DE GRAFF, JJ., concur.