STATE OF IOWA, Appellee, v. D. J. MURPHY, Appellant.

JANUARY 10, 1928.

REHEARING DENIED APRIL 5, 1928.

*E. H. Estey, Trewin, Simmons & Trewin,* and *McCook & Lyons,* for appellant.

*Elmer F. Pieper, A. E. Sheridan, J. A. Nelson, John A. Senneff, John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

KINDIG, J.—There is no error assigned because of any discrepancies occurring at the trial on the indictment. Attack, however, is centered, first, on the court's assumption of jurisdiction, and second, on alleged errors said to have been committed during the examination of the appellant's soundness of mind, to determine whether or not the main cause should proceed.

On April 1, 1925, the grand jury of Allamakee County returned "the indictment" in question against D. J. Murphy, the appellant, whereupon he was arrested, and furnished bail for his appearance. Afterwards appellant, on April 8th, pleaded not guilty, filed a motion for a change of venue, and, upon proper proceedings, the transfer was granted to Howard County, where the "trial" date was fixed for May 18, 1925. Then, at the appointed time, the appellant appeared, and by his attorneys moved to quash the "indictment." After argument thereon, the relief was denied, following which appellant then presented his objection to the jurisdiction of the district court and the power thereof to try him, because, prior to this "indictment," said Murphy had been adjudicated insane, March 30, 1925, by the commission of insanity, under Chapter 197 of the Code of 1924, while he was a patient at the psychopathic hospital in Iowa City, and that the "commission" committed him to the state hospital at Independence. Therefore he alleged that the district court had no "jurisdiction to try him on the indictment named until the finding of said commission of insanity is set aside, or until the superintendent of the hospital for the insane at Independence, or other competent authority, shall determine that appellant is cured and has recovered his reason."

In resistance, the State asserts that the appellant was arrested and held to answer under eight previous and different "indictments" pending in the same court, which said accusations were "returned" the preceding January, and, due to this state of the record, the district court had "jurisdiction" of appellant by virtue of the former "indictments." Necessarily, appellee contends this "jurisdiction" includes the present judicial action, its theory being that "jurisdiction" acquired for one must by necessity cover all criminal hearings. Thus confronted by the controversy, the district court overruled the exception to its "jurisdiction," and first called the jury to decide the mental condition of appellant, resulting in a pronouncement of "sanity." Hence, a "trial" was had to another panel of twelve men on the charge named in "the indictment," culminating in a verdict of guilty.

Grounds for reversal will now be considered in the order first above named.

I. At the outset, there is to be met the contention against "jurisdiction."

Appellant's major premise is based upon *Stone v. Conrad*, 105 Iowa 21, and *Quaintance v. Lamb*, 185 Iowa 237. *Stone v. Conrad*, supra, was in certiorari, and presented a situation where a jury in the district court found the defendant insane, whereupon he was confined in the department for such in the penitentiary at Anamosa. This he resisted, upon the theory that the condition of his mentality should have been determined by the county "commissioners of insanity," before whom application was pending at the time "the indictment was returned." We said there:

"The district court has exclusive jurisdiction in criminal matters, save where otherwise conferred. Certainly it will not be contended that the commissioners of insanity have any criminal jurisdiction. When the jurisdiction of the district court has once attached in a criminal case, it continues; and it extends, by express terms of the statute, to the investigation of the sanity of a defendant. When does this jurisdiction attach? * * * Can it be that, after the jurisdiction of the district court has attached, but before the trial of the case has actually begun, the commissioners of insanity can open the jail door, take out the criminal defendant, and dispose of him as they may think best? Surely this is not the law. It must be that the jurisdiction of the district court attaches at the time of the service of a warrant issued upon an indictment, and that from this time it has control of the person of defendant; not only for the purpose of the criminal investigation, but for all matters incident thereto."

*Quaintance v. Lamb*, supra, involved a writ of habeas corpus. Defendant was in the jail of Mahaska County, charged with the crime of murder, but neither convicted nor "indicted." Information charging him with insanity was duly filed. Thereupon, investigation was had before the "commissioners," ending in an order issued for his commitment to the hospital at Mt. Pleasant. That command was placed in the hands of the sheriff for service. However, instead of obeying it, he removed the accused from the Mahaska County jail to that of Poweshiek County, for detention, pending trial for the crime. Injunction was sought to stay this action, but refused, and the prisoner

ordered into court for arraignment; when objection was made that he was in the custody of the superintendent of the hospital for the insane, and not subject to the "jurisdiction" of the court for "trial." These protestations were overruled, arraignment was had, and a plea of not guilty entered. Over defendant's remonstrance, the trial date was fixed; but in the meantime, application was made to this court for the writ. Language of the opinion is to the effect that:

"This [the statute] plainly contemplates that the prisoner shall be treated at the Hospital for the Insane until restored to reason. He could not be put on trial before. The superintendent of the hospital is to determine when he is cured, and issue his warrant accordingly. There seems to be no escape from the conclusion that, under these statutes, the accused should have been taken to the Hospital for Insane, and there retained as a prisoner, and treated as a patient, until the superintendent found his reason restored, and issued a warrant for his return to the jail of the county, after which he would be subject to being put on trial. * * * It must be that the jurisdiction of the district court attaches at the time of the service of a warrant issued upon an indictment, and that from this time it has control of the person of the defendant, not only for the purpose of the criminal investigation, but for all matters incident thereto."

Before us in the case at bar is the situation where, under the citations made, the district court had "jurisdiction" of appellant for the purpose of the eight "indictments" returned in January, and for all legal objects directly and indirectly connected therewith the right of the district court to proceed was supreme. Pending at the same time was the present "indictment." The district court had a right to try the defendant on any one or all of the previous eight charges. When so doing, that court was entitled to have adjudged, through the intervention of the jury, the question of appellant's "sanity." Had the present inquiry for that purpose been instituted under any one of the eight offenses named, the result no doubt would have been the same. Can it be said that, while that is true so far as the January "indictments" are concerned, yet, because of the action of the psychopathic commission, it is not so in reference to the April "indictment," even though all are ex-

isting at the same time in the same court? To put the proposition in another way is to say that, within the contemplation of the law, the appellant is "sane and insane" at the same moment. Surely there cannot be attributed to the legislative intention a ridiculousness approaching an absurdity.

Section 3540 of the Code of 1924 provides:

"Said commission shall, except as otherwise provided, have jurisdiction of all applications for the commitment to the state hospitals for the insane, or for the otherwise safe-keeping, of insane persons within its county, unless the application is filed with the commission at a time when the alleged insane person is being held in custody under an indictment returned by the grand jury or under a trial information filed by the county attorney."

Code of 1924, Section 3993, contains this enactment:

"The medical director, the assistant medical director, and one other member of the medical staff of the state psychopathic hospital shall constitute a commission of insanity; and said commission is hereby vested with all the rights, powers, duties, and obligations of the commission of insanity as now constituted by law, except as herein provided, with full power to receive and act upon all applications filed hereunder, as fully as the commission of insanity is empowered and authorized by law to do. The procedure of the commission hereby created shall be the same as now provided by law, except as herein modified."

No greater power was conferred upon the psychopathic commission than that bestowed upon the county commission, and the latter is limited to instances "when the alleged insane person is [not] being held in custody under an indictment returned by the grand jury." Manifestly, if the appellant, under the circumstances, while out on bail became "insane," either of the commissions named must be inferior in its jurisdiction (if any, in such event, it has) to the superior authority and privileges of the district court, which, by its dominion over appellant, is permitted to exercise its prerogative relative to him, so far as the "January indictments" are concerned, and by necessity the present "indictment" "pending" in the identical court. Harmony and consistency demand this, because there is simultaneous existence. Such furnishes a distinction between this and *Quaintance v. Lamb*, supra.

Article 5, Section 6, of the Iowa Constitution declares:

"The district court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."

Legislation embodied in Section 10761 of the Code of 1924 is this:

"The district court shall have general, original, and exclusive jurisdiction of all actions, proceedings, and remedies, both civil and criminal, except in cases where exclusive or concurrent jurisdiction is or may hereafter be conferred upon some other court or tribunal by the Constitution and laws of the state, and shall have and exercise all the powers usually possessed and exercised by courts of record."

Again, reference is made to another paragraph of the Code of 1924. It is Section 13905, which reads:

"If a defendant appears in any stage of the trial of a criminal prosecution, and a reasonable doubt arises as to his sanity, further proceedings must be suspended and a trial had upon that question."

A definition of "insanity" under Section 63, Subdivision 6, of the Code of 1924, is:

"The words 'insane person' include idiots, lunatics, distracted persons, and persons of unsound mind."

Underlying the preliminary investigation named is the thought that reason and humanity demand that a prisoner who has lost his reason should not be forced to make a defense against the accusation of crime. About this appellant is concerned, but no further. His is not the privilege to select which of the state's institutions shall confine him. As said in *State v. Arnold,* 12 Iowa 479:

"The legal presumption is that he was sane. This presumption should be rebutted [to warrant a jury investigation of the subject], and the reasonable doubt created by the prisoner, or from a consideration of the testimony and circumstances presented. To do this, evidence of mere incapacity to fully understand and comprehend all his legal rights; and to make known in the most succinct and intelligent manner to his counsel all the facts material to his defense, is not sufficient. A doubt must be raised whether, at the time, there is such mental

impairment, either under the form of idiocy, intellectual or moral imbecility, or the like, as to render it probable that the prisoner cannot, as far as may devolve upon him, have a full, fair, and impartial trial.''

This does not mean that the district court must be bound by the findings of ''the commission.'' If so, the statutory provision prescribing its procedure in this event would be meaningless and surplusage. Assuming it has ''jurisdiction,'' it may, without a peradventure of a doubt, exercise it in this regard.

Many forms and degrees of ''insanity'' afflict mankind; the effect and result are varied and different in the individual case, within the broad expanse of the statutory definition almost every conceivable kind and degree of this mental incompetency is covered, warranting treatment at a ''hospital for the insane.'' Yet, on the other hand, included within its wide limits may be the milder afflictions which do not render a defendant incapable of presenting a proper defense in a criminal trial. Were we to hold otherwise, the jail doors would be open for the escape of prisoners over the threshold of hypercritical technicalities and finespun theories of ''insanity.'' We approve of the procedure adopted by the trial court.

II. During the progress of this special hearing it is claimed by appellant that the trial tribunal was mistaken in admitting  testimony on the part of the State concerning the commission of many other crimes by appellant, extending over a period of several years. Notation is to be made of the fact that previously the appellant for himself had introduced the evidence of several witnesses concerning the professional and business activities he was engaged in, as well as physical ailments throughout his lifetime and the mental effect thereof upon him. Very largely, the objectionable items were rebuttal, and more than this, they tended to show the alertness and energy of appellant's mind. For this purpose it was admissible. Repeating again, we parenthetically say that the question did not relate to appellant's guilt under the ''indictment,'' but to his ''sanity'' or ''insanity'' such as to render him capable or incapable of making his defense in the main trial.

III. Doctors Stewart and Pratt and attendants Hester and

Robinson in the state hospital at Independence stated at the trial their observations concerning appellant while a patient there, and this, it is said, is in violation of Section 11263 of the Code of 1924. Being limited to "observations," the assertions of these witnesses were not violative of that section. *In re Harmsen* (Iowa), 167 N. W. 618 (not officially reported) ; *In re Insanity of Fleming,* 196 Iowa 639. Regarding this, the record has been carefully reviewed, and we fail to find that these persons testified concerning any confidential or privileged communication.

IV. Hypothetical questions propounded to the witnesses Doctors Stewart, Krohn, and Hall are assailed, under the idea that there were contained therein opinions of other witnesses.

But we are constrained to say that there is no error found in this regard. Rather than including conclusions of other persons, the interrogatories cover their "observations." The prosecution had a right to embody in a hypothetical question any "facts" supported by the testimony, in order to bring out its theory of the case. *Manatt v. Scott,* 106 Iowa 203 ; *Haddock v. Jacobs,* 185 Iowa 1057. So, then, it was competent to incorporate into the inquiry any proper material not consisting of mere opinions, supporting which there was admissible evidence in the record. Whether or not the "facts" included within the interrogatory had been established, was for the jury. *Manatt v. Scott,* supra, aptly amplifies the thought in this way :

"If there was no evidence tending to sustain some of the material facts included, then the exception is well founded * * * . But it is not essential that the facts be proven to exist. It is sufficient if the evidence tends to establish them."

V. Complaint is made because a witness, Hart, gave his opinion concerning the "sanity" of appellant. About this there can be no valid objection, for the reason that previously this

nonexpert had detailed at great length his many observations and experiences with Mr. Murphy, and the final conclusions announced by the testifier were based upon the facts before related by him. *In re Insanity of Fleming,* supra; *In re Estate of Cooper,*

196 Iowa 116; *Morrison v. McLaughlin*, 191 Iowa 474. *Morrison v. McLaughlin*, supra, declares:

"The admissibility of nonexpert testimony as to mental soundness, when based on facts and circumstances stated by the witness, is well settled."

VI. Several exceptions were made to the instructions because the main "issue" was not properly submitted to the jury. No merit appears in this assignment. Carefully the trial court submitted to the jury the true criterion and correct standard for measuring appellant's mental capacity for the purposes of the inquiry, fully in accordance with *State v. Arnold*, supra, and similar authorities.

Other errors are assigned; but, in view of the previous discussion, it is not necessary to further elaborate and extend this opinion, because, after carefully considering the entire record, we are compelled to agree with the district court, and the judgment of that court is affirmed.—*Affirmed*.

EVANS, FAVILLE, DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.